# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

STATE OF WEST VIRGINIA, *ex rel*. JOHN B. McCUSKEY, Attorney General,

Plaintiff,

v.

3M COMPANY F/K/A
MINNESOTA MINING AND MANUFACTURING
CO.,

Defendant.

Civil Action No. 2:25-cv-00750
Judge Irene C. Berger

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>3M'S MOTION TO DISMISS THE STATE'S COMPLAINT</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................2

I.      3M Manufactures The 8210 Respirator Under A Strict Federal Framework. ....................2

II.     The State Brings This Suit Challenging 3M's NIOSH-Approved 8210 Respirator. ...........4

LEGAL STANDARD........................................................................................................5

ARGUMENT....................................................................................................................5

I.      The State's Claim Is Preempted By Federal Law Because It Is Irreconcilable With
        The Federal Regulatory Scheme. ........................................................................................5

      A.      The State's Claim Is Preempted By The Federal Regulatory
        Regime. ..........................................................................................................6

      B.      Liability Under The Act Cannot Rest On The Assertion That
        Statements Consistent With Federal Requirements Are
        Misrepresentations. ........................................................................................12

II.     The State's Claim Is Time-Barred. .....................................................................................13

      A.      The Challenged Conduct Began Decades Ago. ....................................................14

      B.      The State Has Known Of The Basis For Its Claim For Decades. ...........................15

      C.      The Continuing-Violation Doctrine Does Not Save The State's Claim. ................17

      D.      Laches Bars The Request For Injunctive Relief. ..................................................20

CONCLUSION.................................................................................................................20

**Page(s)**

**Cases**

*State ex rel. 3M Co. v. Hoke*,
    244 W. Va. 299 (W. Va. 2020) ...................................................................15, 19

*Anand v. Ocwen Loan Servicing, LLC*,
    754 F.3d 195 (4th Cir. 2014) ............................................................................5

*Arizona v. United States*,
    567 U.S. 387 (2012) ..........................................................................................7

*Blanyar v. Genova Prodts. Inc.*,
    861 F.3d 426 (3d Cir. 2017) ...........................................................................16

*Brady v. Dow Chem. Co. Ret. Bd.*,
    2019 WL 3453917 (S.D. W. Va. July 31, 2019) ............................................18

*Brewster v. Hines*,
    155 W.Va. 302 (W. Va. 1971) .........................................................................17

*Brown v. Ocwen Loan Servicing, LLC*,
    2015 WL 5008763 (D. Md. Aug. 20, 2015) ...................................................17

*Buckman Co. v. Plaintiffs' Legal Committee*,
    531 U.S. 341 (2001) ........................................................................................13

*Caplinger v. Medtronic, Inc.*,
    921 F. Supp. 2d 1206 (W.D. Okla. 2013) .........................................................9

*Comm. for Accurate Labeling & Mktg. v. Brownback*,
    665 F. Supp. 880 (D. Kan. 1987) ......................................................................9

*Cosm., Toiletry & Fragrance Ass'n v. Minnesota*,
    440 F. Supp. 1216 (D. Minn. 1977) ................................................................10

*Cozzarelli v. Inspire Pharma., Inc.*,
    549 F.3d 618 (4th Cir. 2008) ..........................................................................16

*Delebreau v. Bayview Loan Servicing, LLC*,
    680 F.3d 412 (4th Cir. 2012) ..........................................................................18

*Delebreau v. Bayview Loan Servicing, LLC*,
    770 F. Supp. 2d 813 (S.D. W. Va. 2011) ...................................................18, 19

*Fair Woods Homeowners Ass'n v. Pena*,
    73 F.3d 357 (4th Cir. 1996) ............................................................................20

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
    505 U.S. 88 (1992) .......................................................................................7, 9

*Hall v. Virginia,*
     385 F.3d 421 (4th Cir. 2004) ..................................................................................16

*Hamilton Materials, Inc. v. Dow Chem. Corp.,*
     494 F.3d 1203 (9th Cir. 2007) ................................................................................16

*Int'l Paper Co. v. Ouellette,*
     479 U.S. 481 (1987) ................................................................................................10

*Kloth v. Microsoft Corp.,*
     444 F.3d 312 (4th Cir. 2006) ....................................................................................5

*Kuenzig v. Kraft Foods, Inc.,*
     2011 WL 4031141 (M.D. Fla. Sept. 12, 2011) .......................................................12

*Mansour v. Reeves Bldgs., Inc.,*
     383 F. Supp. 482 (S.D. W. Va. 1973) .....................................................................17

*Maynard v. Bd. of Educ. of Wayne County,*
     178 W. Va. 53 (W. Va. 1987) ..................................................................................14

*McCuskey v. 3M Co.,*
     No. 03-C-109, Dkt. 245 (W. Va. Cir. Ct. Nov. 17, 2017) ......................................17

*Miller v. 3M Co.,*
     No. CC-27-2021-C-44 (W. Va. Cir. Ct. Aug. 19, 2021) .........................................16

*Mut. Pharm. Co. v. Bartlett,*
     570 U.S. 472 (2013) ..................................................................................................8

*United States ex rel. Oberg v. Penn. Higher Educ. Assistance Agency,*
     745 F.3d 131 (4th Cir. 2014) ..................................................................................16

*Perry v. Judd,*
     471 F. App'x 219 (4th Cir. 2012) ...........................................................................20

*Philips v. Pitt Cnty. Mem'l Hosp.,*
     572 F.3d 176 (4th Cir. 2009) ....................................................................................5

*PLIVA, Inc. v. Mensing,*
     564 U.S. 604 (2011) ...............................................................................................8, 9

*Prohias v. Pfizer, Inc.,*
     490 F. Supp. 2d 1228 (S.D. Fla. 2007) ...................................................................12

*Province v. Province,*
     196 W. Va. 473 (W. Va. 1996) .....................................................................14, 18, 20

*Roberts v. W. Va. Am. Water Co.,*
     221 W. Va. 373 (W. Va. 2007) ................................................................................19

*Rouse v. 3M Co.,*
     No. 21-C-809 (W. Va. Cir. Ct. Sept. 10, 2021) ......................................................16

*Sanchez v. Arlington Cnty. Sch. Bd.*,
58 F.4th 130 (4th Cir. 2023) ..............................................................14

*SaurikIT, LLC v. Apple, Inc.*,
2023 WL 8946200 (9th Cir. Dec. 28, 2023) ........................................20

*Scott v. 3M Co.*,
No. CC-27-2021-C-52 (W. Va. Cir. Ct. Sept. 9, 2021) ........................16

*State of Md., to Use of Burkhardt v. United States*,
165 F.2d 869 (4th Cir. 1947) ..............................................................18

*Tidewater Fin. Co. v. Williams*,
498 F.3d 249 (4th Cir. 2007) ..............................................................14

*Tribeca Lending Corp. v. McCormick*,
231 W. Va. 455 (W. Va. 2013) ............................................................18

*White v. Daniel*,
909 F.2d 99 (4th Cir. 1990) ................................................................20

**Statutes**

29 U.S.C. § 671 ..................................................................................3, 6

30 U.S.C. § 803 ..................................................................................3, 6

W. Va. Code § 22A-1-2(a)(9) ................................................................13

W. Va. Code § 46A-6-101(1) ................................................................13

W. Va. Code § 46A-6-102(7)(M) ..........................................................12

W. Va. Code § 46A-7-111(2) ....................................................14, 15, 19

**Regulations**

30 C.F.R. § 57.5005 ................................................................................7

30 C.F.R. § 72.700 ..........................................................................3, 6, 7

30 C.F.R. § 72.701 ..................................................................................7

42 C.F.R. § 84.1 ............................................................................3, 6, 10

42 C.F.R. § 84.33 ....................................................3, 6, 7, 8, 12, 13

71 Fed. Reg. 50,122 (Aug. 24, 2006) ....................................................11

51 Fed. Reg. 37,002 (Oct. 17, 1986) ......................................................11

## Other Authorities

*3M™ Particulate Respirator 8210, N95*, 3M, https://www.3m.com/3M/en_US/
p/dc/v000585997/ ....................................................................................................4

*Approval Details*, NIOSH Certified Equipment List,
https://wwwn.cdc.gov/NIOSH-CEL/..........................................................................3

*How to Tell If Your N95 Respirator Is NIOSH Approved*,
NIOSH Pub. No. 2021-124 (Sept. 2021),
https://www.cdc.gov/niosh/docs/2021-124/pdfs/2021-124.pdf..............................................3

**INTRODUCTION**

The State of West Virginia's complaint should be dismissed with prejudice for each of two independent and purely legal reasons.

*First*, the State's challenge to the labeling and sale of 3M's 8210 respirator conflicts with—and thus is preempted by—federal law. The 8210 respirator is a federally certified "N95" respirator that meets strict federal standards for performance and quality. The National Institute for Occupational Safety and Health (NIOSH), in its role as a federal regulator of workplace safety equipment, administers a rigorous set of requirements that respirators must meet to qualify as approved equipment. NIOSH also imposes strict labeling requirements on approved respirators. In turn, the Mine Safety and Health Administration (MSHA) has adopted NIOSH's approval scheme in its role as the federal regulator of mines and mining operations. The State does not dispute that 3M's 8210 respirator has at all times met and complied with the federal government's strict qualifications and labeling requirements and has been federally approved for use in coal mines. Nonetheless, the State now alleges in its single-count complaint that 3M has engaged in unfair or deceptive practices under the West Virginia Consumer Credit and Protection Act (the Act) by misrepresenting the effectiveness of the respirator for use in coal mines. The State does not hide that its theory of liability directly conflicts with federal law. It complains that 3M should have told the public to *ignore* NIOSH's approval of the 8210 respirator—that 3M "should have provided a warning on the respirator itself something akin to 'NOT FOR USE IN COAL MINING/ IGNORE NIOSH COAL APPROVAL.'" Compl. ¶ 160; *see also id.* ¶ 161 (same for respirator box). That makes the State's claim doubly defective. It is hard to imagine a more direct conflict giving rise to preemption by federal law. And by definition, as a matter of state law, labeling a product in conformity with federal law cannot be "deceptive" or "unfair" under the Act.

*Second*, the State's claim is time-barred. The State's claim for civil penalties is governed

1

by a four-year statute of limitations, which runs from the date the State knew or should have known the information underlying its claim. The complaint and judicially noticeable facts make clear that the State has been actually aware of the allegations underlying its claim for far more than four years. As the complaint acknowledges, the State has been litigating claims against 3M concerning the 8710 respirator "for more than 22 years" in a case currently in trial, Compl. ¶ 3, and the State alleges here that the 8210 respirator is defective precisely because it is just like the 8710 respirator, *id.* ¶ 33. Those alleged similarities between the 8210 and 8710 respirators were apparent when the 8210 was first introduced in the late 1990s. In fact, the lawyers who have been litigating the case against 3M's 8710 respirator on behalf of the State—for *decades*—are the very same counsel who filed this lawsuit against the 8210 respirator that has been on the market for thirty years. The statute of limitations has long since expired. The State cannot evade that outcome by invoking the continuing-violation doctrine. That theory is foreclosed by the Act's text, is contrary to the Act's purposes, and is inconsistent with caselaw interpreting the Act. The State's inexcusable delay means that the equitable doctrine of laches likewise precludes it from seeking an injunction.

3M had every right to rely on the federal regulatory scheme in designing the 8210. And the State has no right to bring a spurious lawsuit based on conduct that it has been aware of for decades merely to gain a perceived advantage in other litigation. The Court should dismiss the complaint with prejudice.

## BACKGROUND

### I. 3M Manufactures The 8210 Respirator Under A Strict Federal Framework.

3M manufactures and distributes workplace personal protective equipment, including "N95" respirators such as the 8210. Compl. ¶¶ 30, 140. The 8210 has been approved by NIOSH since 1995. *Id.* ¶ 5; *see also Approval Details*, NIOSH Certified Equipment List (last updated Dec. 13, 2024), https://wwwn.cdc.gov/NIOSH-CEL/.

Pursuant to the Occupational Safety and Health Act of 1970 (OSH Act), NIOSH established "respiratory protection requirements" for respirators and issued regulations allowing manufacturers to obtain NIOSH approval for products compliant with its requirements. *See* 29 U.S.C. § 671(d); 42 C.F.R. § 84.1(a), (c). NIOSH has adopted a series of requirements governing the testing, certification, and labeling of respirators. In turn, MSHA regulates U.S. coal mines and enforces safety requirements. 30 U.S.C. § 803; *id.* § 842(h). MSHA sets health standards for coal mines, and it requires mines to provide "[r]espiratory equipment approved by NIOSH under 42 CFR part 84" to miners. 30 C.F.R. § 72.700(a).

NIOSH-approved respirators must comply with specific labeling requirements that obligate the manufacturer to label the respirator with the NIOSH "emblem," NIOSH "approval number," and NIOSH-imposed "restrictions or limitations," 42 C.F.R. § 84.33(b), and to place the label in a specific "[l]ocation" on the respirator, *id.* § 84.33(e). NIOSH requires that "[e]ach respirator" "be labeled distinctly" to permit easy identification and that manufacturers submit proposed labeling for approval. 42 C.F.R. § 84.33(a), (g). When a respirator passes certification testing, NIOSH requires that the front of the product appear as depicted below:



*How to Tell If Your N95 Respirator Is NIOSH Approved*, NIOSH Pub. No. 2021-124 (Sept. 2021), https://www.cdc.gov/niosh/docs/2021-124/pdfs/2021-124.pdf.

The NIOSH-approved 8210 has at all times complied with these labeling requirements. It

includes the part number, the NIOSH stamp, the TC-Approval Number, the lot number, and "N95," a rating describing the NIOSH filter series. As the State acknowledges, there is a warning "on the front of the 8210 itself" that "[m]isuse may result in sickness or death" and directing users to instructions for proper use. Compl. ¶ 150. An image of the 8210 respirator appears below:



*3M™ Particulate Respirator 8210, N95*, 3M, https://www.3m.com/3M/en_US/p/dc/v000585997/.

## II.     The State Brings This Suit Challenging 3M's NIOSH-Approved 8210 Respirator.

The complaint alleges that the 8210 respirator suffers from "fit defects" that prevent it from providing adequate protection, Compl. ¶ 7, and that by marketing and labeling the 8210 respirator for its NIOSH-approved uses, 3M makes "misrepresentations" about the safety and performance of the respirator in light of the alleged "fit defects," *id.* ¶¶ 5, 33. The State seeks "civil penalties (and associated attorneys' fees and interest)," Compl. at 71–72, and an order "enjoin[ing] 3M from advertising and selling the 8210 disposable respirator in West Virginia," *id.* at 71.

Nearly all of the complaint's specific allegations of "fit defects" in 3M respirators concern a prior iteration, the 8710 respirator, which was approved by NIOSH in 1972, Compl. ¶ 20, and which was last sold in West Virginia roughly thirty years ago, *id.* ¶ 28. As the State acknowledges, the 8210 is a different product. *Id.* ¶ 30. It was developed in 1995, two decades after the 8710 respirator was first approved, and was designed to meet a different regulatory environment after NIOSH changed its "certification criteria." *Id.* ¶¶ 28–29. As an N95 respirator, the 8210 incor-porates filter media that provides at least 95% filter efficiency. The State acknowledges that this

8210 "filtering material" or "media" is "different" from and "thicker" than that incorporated into the 8710 respirator. *Id*. ¶¶ 30–33.

Nonetheless, the State attempts to link the alleged defects in the 8710 respirator to the 8210 by contending that "[b]ecause their 'fit characteristics' are the same, the 8210 has the same fit defects as the 8710." Compl. ¶ 33. These alleged "fit defects" include (a) lack of a reliable fit check or fit test, (b) faceseal leakage as a result of hot and humid environments, (c) lack of durability, and (d) lack of strap or size adjustability. Compl. VII(A–F). The State alleges that 3M did not adequately disclose these supposed "fit defects." Compl. ¶¶ 33, 133–64, 172.

## LEGAL STANDARD

A complaint cannot survive a motion to dismiss unless it makes "[f]actual allegations" that are "enough to raise a right to relief above the speculative level" and contains "enough facts to state a claim to relief that is plausible on its face." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (quotation marks omitted). The Court does not "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (quotation marks omitted). Similarly, the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006) (quotation marks omitted).

## ARGUMENT

### I. The State's Claim Is Preempted By Federal Law Because It Is Irreconcilable With The Federal Regulatory Scheme.

The complaint seeks to use a state general consumer protection statute to impose a fabricated state-law labeling requirement on the federally-approved 8210 respirator. But state law does not dictate the requirements for labels or warnings on 8210 respirators; federal law does. The state-law regime invented in this lawsuit is preempted because it conflicts with that regulatory

scheme; 3M had every right to rely on that scheme when designing the 8210. The complaint faults 3M for not providing the warning "IGNORE NIOSH COAL APPROVAL" or something "akin" to that language on the box of 8210s and on the respirators themselves. Compl. ¶¶ 160–61. Because the State's proposed warning would conflict with federal regulations requiring NIOSH-approved respirators like 3M's 8210 to bear specific "labels and markings," 42 C.F.R. § 84.33(a), and federal regulations requiring NIOSH-approved respirators to be used in mines, 30 C.F.R. § 72.700, its claim is preempted by federal law. And because the statements and labels that the State alleges are misrepresentations that simply comply with the federal approval and labeling requirements, those statements and labels are not misleading as a matter of state law.

## A. The State's Claim Is Preempted By The Federal Regulatory Regime.

NIOSH has authority under the OSH Act to research and develop "criteria for new and improved occupational safety and health standards." 29 U.S.C. § 671(d). Pursuant to that authority, NIOSH established respirator "construction, performance, and respiratory protection requirements," and issued regulations conditioning NIOSH "approval" on manufacturers' compliance with those requirements. 42 C.F.R. § 84.1(a), (c). Manufacturers of NIOSH-approved respirators must follow specific labeling requirements, including by labeling the respirator with the NIOSH "emblem," NIOSH "approval number," and NIOSH-imposed "restrictions or limitations," *id.* § 84.33(b), and by placing the label in a NIOSH-specified "[l]ocation," *id.* § 84.33(e); *see also id.* § 84.33(g) (respirators must "be labeled distinctly"). 3M must submit reproductions of respirator labels and markings for NIOSH's approval. *Id.* § 84.33(a).

MSHA, in turn, has authority under the Federal Mine Safety and Health Act of 1977 to regulate mines and mining operations. 30 U.S.C. § 803; *id.* § 842(h). Pursuant to that authority, MSHA adopts NIOSH's approval scheme by requiring that "[r]espirators approved by NIOSH under 42 CFR part 84 which are applicable and suitable for the purpose intended shall be

6

furnished" to those working in mines, 30 C.F.R. § 57.5005; *see also* 30 C.F.R. § 72.700(a) (requiring NIOSH-approved respirators in mines), 30 C.F.R. § 72.701 (similar). The 8210 respirator is such a respirator approved under 42 C.F.R. § 84.33. Accordingly, the 8210 has been approved by the applicable federal regulatory authority for use in coal mines.

The State attempts to impose a state-law regulatory regime that conflicts with the federal regime administered by NIOSH and MSHA. That is impermissible. State laws "are preempted when they conflict with federal law." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Conflict preemption exists both in "cases where compliance with both federal and state regulations is a physical impossibility and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citation and quotation marks omitted); *see also Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (plurality op.) (similar). Because the State's suit purports to mandate labeling and disclosure requirements that conflict with those imposed by federal law, its claim is preempted.

***Impossibility preemption.*** It would be impossible for 3M to comply with both (1) the NIOSH and MSHA regimes and (2) the duties that the State claims are required by West Virginia law. NIOSH requires 3M to submit "[f]ull-scale reproductions of approval labels and markings . . . together with instructions for the use and maintenance of the respirator" to NIOSH "for approval." 42 C.F.R. § 84.33(a). And NIOSH demands that 3M stamp the 8210 respirator with the specific information, including the NIOSH "emblem" and "the seal of the Department of Health and Human Services" along with the "restrictions or limitations placed upon the use of the respirator by" NIOSH. *Id.* § 84.33(b). NIOSH also provides that it "shall, where necessary, notify the applicant when additional labels, markings, or instructions will be required." *Id.* § 84.33(c).

It would not be possible for 3M to comply with this federal regime while also complying

7

with the State's novel contention that 3M must alter the label on the respirator, notwithstanding NIOSH regulations to the contrary. Impossibility preemption exists where, as here, a "party cannot independently satisfy [] state duties" without "permission and assistance" from a "federal agency." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 623–24 (2011). Needless to say, NIOSH would not approve a label that includes "IGNORE NIOSH" alongside its carefully-reticulated scheme, which eliminates any possibility of 3M's complying with both the State's supposed state-law labeling requirements and its federal labeling obligations. *Id.; see also Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 480 (2013) (state claim preempted when it was "impossible for [defendant] to comply with both its state-law duty to strengthen the warnings on [its] label and its federal-law duty not to alter [the] label"). In short, reconciling the NIOSH regime and the State's claim here is not possible.

And it would be no answer for the State to come up with a different label that does not literally say "IGNORE NIOSH," because in order to provide *any* warning on the face of the 8210 respirator that departs from the language approved by the federal government, 3M would have to go to NIOSH to request permission. 42 C.F.R. § 84.33(a). In *PLIVA v. Mensing*, 564 U.S. 604 (2011), the Supreme Court held that preemption applies where the defendants would need federal approval in order to comply with the asserted state-law duty. There, the plaintiffs claimed that drug manufacturers had a duty to provide a "different, stronger label than the label they actually used," which had been prescribed by the FDA. *Id.* at 617. The Supreme Court held that the plaintiffs' claim was preempted: "Federal drug regulations, as interpreted by the FDA, prevented the Manufacturers from independently changing their generic drugs' safety labels." *Id.* It did not matter that the federal regulator could have given permission to adjust the label—the "question for 'impossibility' is whether the private party could *independently* do under federal law what state law requires of it." *Id.* at 620 (emphasis added). Here, as in *PLIVA*, 3M cannot.

***Obstacle preemption.*** The State's claim is conflict-preempted for a second reason: its demand for a disclaimer or qualification would pose an obstacle to the purposes and objectives of the NIOSH regulatory regime. *See Gade*, 505 U.S. at 98 (plurality op.). NIOSH makes recommendations to prevent work-related injuries, based on a rigorous testing and approval regime. In order to be effective, the regulator's certification must communicate that a product has met or exceeded standards to secure NIOSH approval and, consequently, MSHA approval. Here, the State contends that 3M's description of the NIOSH system is a deceptive trade practice because it "implies that NIOSH approval connotes a measure of safety and proper fit." Compl. ¶¶ 40, 160. The State suggests that state law requires 3M to communicate that NIOSH approval does not mean a product meets standards for performance and quality, and in fact users should "IGNORE NIOSH." The State's theory is that 3M must tell consumers the exact opposite of what NIOSH says and requires—that the 8210 respirator is not "effective" for the very uses NIOSH and MSHA authorize, a finding that "would be contrary" to the regulator's approval. *Caplinger v. Medtronic, Inc.*, 921 F. Supp. 2d 1206, 1222 (W.D. Okla. 2013), *aff'd*, 784 F.3d 1335 (10th Cir. 2015).

NIOSH's label is critical to conveying specific information to users. NIOSH instructs users to check products for the "specific labeling printed on the facepiece" to confirm it is a "NIOSH-approved respirator" that has passed NIOSH's "strict quality assurance and performance requirements." *How to Tell If Your N95 Respirator Is NIOSH Approved*, *supra*. Whether the State demands that 3M specifically instruct users to "IGNORE NIOSH" or more generally seeks some other warning "on the respirator itself" or elsewhere, Compl. ¶¶ 160–61, the result would be the same: labeling whiplash causing profound user confusion. *See Comm. for Accurate Labeling & Mktg. v. Brownback*, 665 F. Supp. 880, 884–85 (D. Kan. 1987) (preemption when state law required "artificial" food label in addition to federal "imitation" label); *see also Cosm., Toiletry &*

*Fragrance Ass'n v. Minnesota*, 440 F. Supp. 1216, 1224–25 (D. Minn. 1977), *aff'd*, 575 F.2d 1256 (8th Cir. 1978) (preemption when state and federal labels were "irreconcilable").

It does not matter that the State purports to be pursuing worker safety. Compl. ¶ 1. Even when "both federal and state law" share the same "goal," state law "is pre-empted if it interferes with the methods by which the federal statute was designed to reach th[at] goal." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987). The State's demand that 3M qualify its NIOSH approval label thus poses an impermissible obstacle to the federal uniform standards for "approval for res-pirators" that have "met the applicable construction, performance, and respiratory protection re-quirements" in the NIOSH regulations. 42 C.F.R. § 84.1(c) (discussing "purpose" of regulations).

To be sure, the Occupational Safety and Health Administration (OSHA), which has general authority over working conditions, has indicated that NIOSH certification may not preempt every variety of state-law tort claim. *See Clarification of OSHA's Position on Preemption Precluding State Court Findings with Regard to Defective NIOSH-Certified Respirators*, OSHA (Feb. 3, 2010), https://www.osha.gov/laws-regs/standardinterpretations/2010-02-03-0. At the same time, however, OSHA explained that the inapplicability of field preemption "does not mean that a state tort suit could never be preempted *on conflict grounds*." *Id.* (emphasis added); *see also id.* (NIOSH "label approval does not restrict a respirator manufacturer from providing additional, up-to-date warnings . . . so long the information *does not conflict with the approved labeling*" (emphasis added)). Those conflict preemption grounds exist here, where the State demands that 3M instruct purchasers and users to ignore the very NIOSH label that NIOSH requires 3M to include on its product. It is difficult to imagine a more direct conflict between federal and state demands.

Under the regime Congress created for respirator approval, NIOSH and MSHA—not the State—are the leading regulators. The primacy of the federal regulatory authorities is clear from

10

historical events the State itself relays, albeit incompletely, in the complaint. The State notes that, in 1986, 3M included a statement on the box of 8710 respirators reading: "DO NOT USE AGAINST ASBESTOS/ IGNORE NIOSH ASBESTOS APPROVAL." Compl. ¶ 157. But 3M was not defying NIOSH in that instance. Instead, it used that label because the federal government—specifically OSHA—changed its asbestos rule in 1986, and 3M *complied with* the new rule. *See Occupational Exposure to Asbestos, Tremolite, Anthophyllite, and Actinolite*, 51 Fed. Reg. 37,002, 37,005–07 (Oct. 17, 1986) (setting out respirator use regulations). 3M could not and did not tell the public to *ignore* federal law, nor can the State compel (or fairly ask the Court to require) 3M to take actions in conflict with federal law.

Similarly, the State makes much of statements made by OSHA—in correspondence with 3M in the 1980s, in a 1987 D.C. Circuit case, and in other statements from the 1990s—concerning purported difficulties performing fit checks on the 8710 respirator. Compl. ¶ 46. But the complaint elsewhere acknowledges that those statements were made in a now outdated regulatory context. OSHA *previously* "recognized limitations" of a fit check for "dust and mist respirators such as the 3M 8710." *Id*. ¶ 46(f). That is no longer OSHA's position. As the State acknowledges, a 2006 rule "shifted some responsibility to the purchasers of respirators." *Id*. ¶ 48. That 2006 rule explains that "new developments allowed the Agency to reassess filtering facepieces and find that *these respirators can be reliably fit tested and fit checked*." Assigned Protection Factors, 71 Fed. Reg. 50,122, 50,164 (Aug. 24, 2006) (emphasis added). As a result, OSHA "requires that an employee perform a user seal check" or fit check, not the manufacturer. *Id*.; *see also* Compl. ¶ 48.

The State's attempt to use the Act to circumvent and undermine NIOSH's approval and labeling system, and MSHA's adoption of that system, is conflict-preempted. 3M reasonably relied on the federal regulatory framework, and to allow the State to undercut that framework would

11

eliminate the predictability that the federal regulations provide. *North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 301, 306 (4th Cir. 2010) (regulations "reflect[] the extensive application of scientific expertise" and "give rise to broad reliance interests" for "enterprises that have complied with [their] requirements"). The entire complaint should be dismissed with prejudice.

**B.      Liability Under The Act Cannot Rest On The Assertion That Statements Consistent With Federal Requirements Are Misrepresentations.**

The State's theory also runs aground as a matter of state law because the Act does not and cannot impose liability for statements that are consistent with federal requirements. The fact of the matter is, the federal government approved the 8210 respirator as compliant with federal regulations—and *required* that the 8210 bear a label indicating NIOSH approval. 42 C.F.R. § 84.33(b) (requiring approval labels bearing NIOSH emblem and approval number). Adhering to that federal mandate by definition cannot constitute "deception, fraud, false pretense . . . or the concealment . . . of any material fact" prohibited by the Act. W. Va. Code § 46A-6-102(7)(M). As other federal courts have held, "labeling is not misleading" "as a matter of law" where it complies with federal labeling regulations. *Kuenzig v. Kraft Foods, Inc.*, 2011 WL 4031141, at *9 (M.D. Fla. Sept. 12, 2011), *aff'd*, 505 F. App'x 937 (11th Cir. 2013) ("[e]ven if Plaintiff's claims were not preempted," the plaintiff did not state a state-law claim for false advertising because the labeling complied with federal regulations). Where advertisements "generally comport with the approved label," they are "not misleading as a matter of law." *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1235 (S.D. Fla. 2007).

The State's effort to craft a respirator labeling scheme out of its general consumer protection statute is misplaced. The West Virginia legislature made clear that courts construing the Act must be "guided by the policies" and "interpretations" of the Federal Trade Commission and

"federal courts" regarding "the various . . . federal statutes dealing with the same or similar matters." W. Va. Code § 46A-6-101(1). The Court therefore must interpret the Act in tandem with the OSH Act and the NIOSH regime, not in conflict with those sources of federal law. And the legislature embraced the federal system when addressing workplace safety for miners. *See, e.g.*, *W. Va. Code* § 22A-1-2(a)(9) (defining permissible safety equipment by reference to federal mine regulators). That cooperation between state and federal regimes provides clarity for employers and users alike. The State's theory that labels mandated by federal regulators are misleading is meritless.

3M's labeling and representations concerning the 8210 are consistent with the governing federal regulations. *See* 42 C.F.R. § 84.33. The State does not allege that 3M falsely represented that the 8210 respirator was approved by NIOSH. Nor can the State rest a claim under the Act on the theory that 3M manipulated the NIOSH review process to obtain approval through fraudulent means. *See, e.g.*, Compl. ¶ 95 (accusing 3M of misleading NIOSH regarding the 8710's "problems meeting the 15 mm breathing resistance limit in the late 1970's and into the 1980's"). Because the "relationship between a federal agency and the entity it regulates is inherently federal in character," it is not the proper subject of a claim under state law. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347–48 (2001) (fraud-on-the-FDA claim under state law preempted by the Federal Food, Drug, and Cosmetic Act).

At bottom, the complaint is a direct attempt to use state law to challenge the 8210 respirator's NIOSH-specified federal label and statements by 3M that are descriptive of and consistent with its NIOSH approval. That claim is not actionable as a matter of law. The Court can and should stop here, and dismiss the complaint with prejudice.

## II.     The State's Claim Is Time-Barred.

An independent reason to dismiss the complaint with prejudice is that West Virginia

imposes a four-year limitations period on civil-penalty claims by the State under the Act. As the allegations in the complaint demonstrate, and the State's decades-long litigation over the 8710 respirator confirms, the State has been well aware of the allegations underlying its complaint for many years, if not decades. Its attempt to recover civil penalties now is barred by the statute of limitations, and its request for injunctive relief is barred by laches. The Court should dismiss the untimely complaint in full. *See Sanchez v. Arlington Cnty. Sch. Bd.*, 58 F.4th 130, 135 (4th Cir. 2023) ("A court may dismiss a complaint on statute of limitations grounds if the time bar is apparent on the face of the complaint."); *Maynard v. Bd. of Educ. of Wayne Cnty.*, 178 W. Va. 53, 62 n.11 (W. Va. 1987) (it is "appropriate to declare laches based upon the pleadings" where the delay and resulting prejudice are apparent from the complaint).

### A.    The Challenged Conduct Began Decades Ago.

Statutes of limitations "represent a pervasive legislative judgment" favoring "the right to be free of stale claims." *Province v. Province*, 196 W. Va. 473, 482 (W. Va. 1996); *see also Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 261 (4th Cir. 2007) ("the elimination of stale claims is the raison d'être of statutes of limitations"). West Virginia has directed that "[n]o civil penalty" "may be imposed for violations of" the Act in a suit brought by the Attorney General "occurring more than four years before the action is brought." W. Va. Code § 46A-7-111(2).

The complaint challenges conduct dating back to the late 1990s, when 3M first sold the 8210 respirator. Compl. ¶¶ 28–29. The State's entire theory of misrepresentations and omissions about the 8210 rests on the allegation that the 8210 shares the discontinued 8710's alleged "defects" because each is a "disposable, single-use, valveless, cup-shaped" filtering respirator. *Id.* ¶¶ 28, 33. Accepting those allegations as true for purposes of this motion to dismiss, those similarities between the 8210 and 8710 respirators—and 3M's supposed failure to disclose the alleged defects in the 8210 respirator—were as true in the late 1990s as they are today. And the State

14

knew it.  The State's claim is legally meritless and should never have been brought for the reasons discussed above.  But if the State intended to pursue it, the State needed to have done so decades ago.  Its failure to do so renders the State's claim for civil penalties untimely as a matter of law.

### B.      The State Has Known Of The Basis For Its Claim For Decades.

Any attempt by the State to invoke the discovery rule to salvage its civil-penalty claim would be unavailing.  Under the discovery rule, the Act's four-year limitations period runs from the date "the Attorney General discover[ed] or reasonably should have discovered" the alleged "deception, fraud, or other unlawful conduct supporting the action."  *State ex rel. 3M Co. v. Hoke*, 244 W. Va. 299, 309–10 (W. Va. 2020) (interpreting W. Va. Code § 46A-7-111(2)).  That is no help to the State.  The State's basis for asserting that the 8210 respirator is defective rests on its theory that "the 8210 has the same fit defects as the 8710."  Compl. ¶ 33.  On the complaint's own telling, then, the State had all the information necessary to file this suit once it was aware of (i) the purported flaws in the 8710 respirator, (ii) the alleged resemblance between the 8710 respirator and the 8210 respirator, and (iii) the purportedly misleading statements on the 8210 respirator, its box, and 3M's website.  In light of the connection between the State's 8210 and 8710 allegations, the State had knowledge of the alleged conduct underlying this suit when it initiated the 8710 action. This suit therefore comes over two decades too late.[1]

What's more, publicly available information and documents attached to and described in the State's complaint independently establish that the State's claim is time-barred.  A litigant is "on notice of a potential misrepresentation" when "public[ly] available information, including government regulations, books and news articles," provide "enough about the controversy" for the

_____

[1] The timing of this suit is no mystery; the State appears to be concerned with its prospects in the 8710 litigation, and is using this separate suit to secure leverage over 3M—or, as the State put it, "shake the trees" on settlement.  *See* Dkt. 1-2 at 5–6.

litigant to "be suspicious that the position taken by [the defendant] was false." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007); *see also Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 432 (3d Cir. 2017) (affirming motion to dismiss on limitations grounds because the plaintiffs' "complaint [] reference[d] OSHA's [] exposure regulations" about the chemical underlying their medical monitoring claims that "have been in effect since 1974").

For more than four years before this suit was filed, plaintiffs—represented by the same lawyers who represent the State here, and who represent the State in the 8710 case—have publicly alleged injuries from using both the 8710 and the 8210 based on the same purported design defects. *See, e.g.*, *Miller v. 3M Co.*, No. CC-27-2021-C-44 (W. Va. Cir. Ct. Aug. 19, 2021) (Lonnie C. Simmons and Robert M. Bastress III, counsel of record); *Scott v. 3M Co.*, No. CC-27-2021-C-52 (W. Va. Cir. Ct. Sept. 9, 2021) (same); *Rouse v. 3M Co.*, No. 21-C-809 (W. Va. Cir. Ct. Sept. 10, 2021) (same).

Needless to say, the Court can take judicial notice of these indisputable facts. It is well-settled that the Court's review is "not confined to the four corners of the complaint," and the Court may "take judicial notice of matters of public record" and "may consider 'documents incorporated into the complaint by reference' 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citations omitted); *see also Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (taking judicial notice of "publicly available [information] on the official redistricting website of the Virginia Division of Legislative Services"); *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 625–26 (4th Cir. 2008) (considering analyst reports attached to complaint). And the Court may "take judicial notice of docket entries, pleadings and papers in other cases." *Brown v. Ocwen Loan Servicing, LLC*, 2015 WL 5008763, at *1 n.3 (D.

Md. Aug. 20, 2015) (collecting authorities).

In this case, the complaint itself cites the private lawsuits brought by plaintiffs alleging injuries from the 8210 respirator, Compl. ¶ 2 n.1, many of which were publicly filed—again, by the very same lawyers as here—more than four years before the State brought this complaint. The State also had actual possession of many of the documents cited in the complaint for years—it was already using those documents in support of its arguments in the 8710 litigation more than eight years before it filed this case. *See, e.g.*, State Reply ISO Mot. to Amend at 15, *McCuskey v. 3M Co.*, No. 03-C-109, Dkt. 245 (W. Va. Cir. Ct. Nov. 17, 2017) (attaching documents cited in Compl. ¶¶ 5, 54, 56, 99, 100, 101, 115, 121, 181). And because the State's private attorneys acting on its behalf then and now knew that information, that knowledge is, at the very least, imputed to the State. *See Brewster v. Hines*, 155 W.Va. 302, 313–14 (W. Va. 1971) (client had notice of document served upon attorney in related suit); *Mansour v. Reeves Bldgs., Inc.*, 383 F. Supp. 482, 484–85 (S.D. W. Va. 1973), *aff'd*, 504 F.2d 812 (4th Cir. 1974) (fraudulent-conversion suit barred by statute of limitations based on plaintiff's attorney's knowledge of sale of plaintiff's property). The bottom line is, for more than four years, the State has had actual knowledge of the purported bases for this complaint.

### C. The Continuing-Violation Doctrine Does Not Save The State's Claim.

The State has suggested that its inexplicable delay in bringing this action might be excused by the continuing-violation doctrine, Dkt. 15 at 12. Not so. That doctrine has no application here. To the contrary: Applying that doctrine here would be contrary to the purposes of the Act's limitations provision, without justification in light of the application of the discovery rule, and inconsistent with the Supreme Court of Appeals' warning against an overly broad application of the doctrine.

*First*, allowing the State to proceed would thwart the purposes of the Act's limitations

provision. Statutes of limitations are "expressions of important legislative policies," and "they should not be judicially abrogated without due consideration of those policies." *Delebreau v. Bayview Loan Servicing, LLC*, 770 F. Supp. 2d 813, 820 (S.D. W. Va. 2011), *aff'd*, 680 F.3d 412 (4th Cir. 2012) (quoting Province, 196 W. Va. at 482). The Act's time bar is designed to "ensure that causes of action [are] brought within a reasonable period of time" by "encouraging prompt initiation of claims" and "avoiding the inconvenience and fraud that may result from the assertion of stale claims." *Delebreau v. Bayview Loan Servicing, LLC*, 680 F.3d 412, 415–16 (4th Cir. 2012). On the State's theory, the Attorney General's claims for civil penalties under the Act would *never* be time-barred if the State sues while an allegedly defective product is still on the market; the State could lay behind the log for many years (as it did here)—and then bring its action when it suits the State's purposes decades later. This is precisely the type of "unjust or . . . absurd conclusion" that the Fourth Circuit has long cautioned should be avoided in construing statutes of limitations, *State of Md., to Use of Burkhardt v. United States*, 165 F.2d 869, 873 (4th Cir. 1947).

In construing other provisions of the Act, courts have rejected a reading that would "allow plaintiffs a half-century in which to bring claims." *Delebreau*, 770 F. Supp. 2d at 821; *see also Tribeca Lending Corp. v. McCormick*, 231 W. Va. 455, 502–03 (W. Va. 2013) (same); *Brady v. Dow Chem. Co. Ret. Bd.*, 2019 WL 3453917, at *3 (S.D. W. Va. July 31, 2019) (rejecting interpretation that "encourages potential plaintiffs to wait as long as possible to file"). In *Delebreau*, the court rejected the plaintiffs' position that the Act's statute of limitations on claims arising from consumer loans made pursuant to revolving loan amounts did not run until the maturity date of the loan ("some thirty years after entering into the loan"), and instead sided with the defendant's reading that the limitations period began to run when debt was accelerated and the last payment became due. 770 F. Supp. at 820–21. This was the only "reasonable result"; "the plaintiffs' reading leads

18

to the absurd conclusion that a consumer plaintiff may bring a cause of action for statutory violations that occurred decades beforehand." *Id.* at 820. That reasoning applies with equal force here.

*Second*, there is no justification for applying the continuing-violation theory here because the Supreme Court of Appeals has already concluded that claims under the Act accrue according to the discovery rule. *Hoke*, 244 W. Va. at 310. Once the State discovers or reasonably should have discovered that a violation has occurred, the Act then provides a four-year period in which to bring a claim. W. Va. Code § 46A-7-111(2). The application of the discovery rule already avoids any "harsh results" that could follow "from the mechanical application of a statute of limitation." *Hoke*, 244 W. Va. at 307. With the benefit of the discovery rule, and a limitations period of four years, the State has ample time to enforce the Act and ensure that true wrongdoing is punished. But allowing the State the additional benefit of the continuing-violation theory (with no basis in the text of the Act), would unfairly permit the State to do just what it has done here—lie in wait for *decades* after the State learns of the information underlying its claim—all while (under the State's theory) civil penalties continue to accrue. Such an open-ended approach would upend the Legislature's decision to impose a limitations period in the Act.

*Finally*, the Supreme Court of Appeals has cautioned against "overly broad" applications of the continuing-violation theory. *Roberts v. W. Va. Am. Water Co.*, 221 W. Va. 373, 378–79 (W. Va. 2007) (rejecting application of the continuing-tort doctrine in a property damage suit). Individual justices have amplified that warning, cautioning that "tolling" in cases under the Act "is an *exception* to the general rule," not a "blanket" presumption. *Hoke*, 244 W. Va. at 314 (Jenkins, J., concurring). Courts considering similar claims have also rejected expansive continuing-violation theories. In *SaurikIT, LLC v. Apple, Inc.*, 2023 WL 8946200, at *1 (9th Cir. Dec. 28, 2023), for example, the Ninth Circuit noted that a "reiteration or extension of" prior acts for many years is

not a continuing violation. *Id.* There, the court agreed with Apple that the relevant conduct was the first time Apple implemented the "warranty term" at issue, and "every time [Apple] sells a new iOS device with [that] warranty agreement," it does not "reset[] the statute of limitations." *Id.* The same result should obtain here.

### D. Laches Bars The Request For Injunctive Relief.

The doctrine of laches independently bars the State's claim for injunctive relief. That is, the State "delayed inexcusably or unreasonably in filing suit" after it "discovered the facts giving rise to its cause of action." *White v. Daniel*, 909 F.2d 99, 102, 105 (4th Cir. 1990) (district court abused discretion in failing to dismiss complaint where plaintiffs' claims were "untimely under the doctrine of laches"); *see also Province*, 196 W. Va. at 483. The State has known about the allegations underlying its complaint since at least as early as when it filed its 8710 case in 2003, Compl. ¶ 7, and has no legitimate excuse for its delay in bringing this action against the supposedly similar 8210 respirator twenty-two years later. The State's unreasonable delay has prejudiced 3M, which continued to distribute the 8210 respirator while the State bided its time, waiting for the most advantageous moment to unleash its strategic suit. Because the State "had ample opportunity" to file this case in the more than 20 years it has been litigating the 8710 case, the Court should dismiss the State's untimely request for injunctive relief. *Fair Woods Homeowners Ass'n v. Pena*, 73 F.3d 357, at *4 (4th Cir. 1996) (unpub.) (delay of 10 years too long); *Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012) (delay of six months too long).

### CONCLUSION

The Court should dismiss the State's complaint in full and with prejudice, because its legal defects are incurable.

Dated: February 5, 2026                    Respectfully submitted,


                                           */s/ Bryant J. Spann*
                                           Bryant J. Spann, Esq. (WV Bar No. 8628)
                                           Robert H. Akers, Esq. (WV Bar No. 9622)
                                           THOMAS COMBS & SPANN, PLLC
                                           300 Summers Street, Suite 1380
                                           Charleston, WV 25301
                                           Telephone:  (304) 414-1800
                                           BSpann@tcspllc.com
                                           RAkers@tcspllc.com

                                           */s/ Lauren Goldman*
                                           Lauren Goldman, *pro hac vice*
                                           Justine Goeke, *pro hac vice*
                                           GIBSON, DUNN & CRUTCHER LLP
                                           200 Park Avenue
                                           New York, NY 10166-0193
                                           Telephone: (212) 351-4000

                                           Steven R. Ruby, Esq. (WV Bar No. 10752)
                                           CAREY DOUGLAS KESSLER & RUBY PLLC
                                           901 Chase Tower
                                           707 Virginia Street, East
                                           P.O. Box 913
                                           Charleston, WV 25323

                                           *Counsel for Defendant 3M Company*

**CERTIFICATE OF SERVICE**

I, Bryant J. Spann, hereby certify that on February 5, 2026, a copy of the foregoing was

served on counsel for Plaintiff by electronic filing through the CM/ECF system.

Jace H. Goins, Esq., Chief Deputy Att'y
Gen., (WV Bar # 6894)
Vaughn T. Sizemore, Esq., Deputy Att'y
Gen., (WV Bar # 8231)
OFFICE OF THE ATTORNEY GEN-
ERAL
Building 1, Room 26-E
Capitol Complex
Charleston, WV 25305
Telephone: (304) 558-2021
Facsimile: (304) 558-0140

J. Timothy DiPiero (W.Va. Bar # 9616)
Lonnie C. Simmons (W.Va. Bar # 3406)
Robert M. Bastress III (W.Va. Bar
# 9616)
DiPIERO SIMMONS
McGINLEY BASTRESS, PLLC
P.O. Box 1631
Charleston, WV 25326
Telephone: (304) 342-0133
Facsimile: (304) 342-4605
Rob.bastress@dbdlawfirm.com

*Counsel for The State*

Dated: February 5, 2026

*/s/ Bryant J. Spann*
Bryant J. Spann, Esq. (WV Bar No. 8628)

*Counsel for Defendant 3M Company*
