**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

STATE OF WEST VIRGINIA, *ex rel*. JOHN B.
McCUSKEY, Attorney General,

             Plaintiff,

   v.

3M COMPANY,

             Defendant.

Civil Action No. 2:25-cv-00750
Judge Irene C. Berger

**REPLY IN SUPPORT OF
<u>3M'S MOTION TO DISMISS THE STATE'S COMPLAINT</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ...............................................................................................1

ARGUMENT.......................................................................................................3

I.    The Federal Regulatory Scheme Forecloses The State's Claim. .......................................3

    A.    Liability Under The Act Cannot Rest On The Assertion That Statements Consistent With Federal Requirements Are Misrepresentations. ..............................................................3

    B.    Impossibility Preemption And Obstacle Preemption Bar The State's Claim. ....................................................................4

II.    The Statute Of Limitations Bars The State's Claim As A Matter Of Law. ...........11

    A.    The Continuing-Violation Doctrine Is Inapplicable. ...............................12

    B.    The State's Policy Argument Does Not Change The Outcome.................18

III.    Laches Bars The State's Claim For Injunctive Relief. ........................................18

CONCLUSION.....................................................................................................19

# TABLE OF AUTHORITIES

**Pages(s)**

## Cases

*State ex rel. 3M Co. v. Hoke*,
    244 W. Va. 299 (W. Va. 2020) ...............................................................................13, 14

*Caplinger v. Medtronic, Inc.*,
    921 F. Supp. 2d 1206 (W.D. Okla. 2013) .......................................................................7

*Chickasaw Tel. Co. v. Sw. Bell Mobile Sys., Inc.*,
    113 F.3d 1245 (10th Cir. 1997) ....................................................................................13

*Columbia Venture, LLC v. Dewberry & Davis, LLC*,
    604 F.3d 824 (4th Cir. 2010) .....................................................................................9, 10

*Cummings v. GEO Group, Inc.*,
    2024 WL 250795 (E.D. Va. Jan. 23, 2024) ..............................................................14, 15

*Daboub v. Gibbons*,
    42 F.3d 285 (5th Cir. 1995) ...........................................................................................16

*Eagon v. Cabell Cnty. Emergency Med. Servs.*,
    2023 WL 8853727 (S.D. W. Va. Dec. 21, 2023)..............................................................6

*Folse v. Kanawha Cnty. Comm'n*,
    2023 WL 2985150 (S.D. W. Va. Jan. 18, 2023).............................................................4

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000)..........................................................................................................9

*Graham v. Beverage*,
    211 W. Va. 466 (2002) ...................................................................................................14

*Heard v. Sheahan*,
    253 F.3d 316 (7th Cir. 2001) .........................................................................................14

*W. Va. ex rel. Hunt v. CaremarkPCS Health, L.L.C.*,
    140 F.4th 188 (4th Cir. 2025) ..........................................................................................6

*Keunzig v. Hormel Foods Corp.*,
    505 F. App'x 937 (11th Cir. 2003) ..................................................................................4

*Kisor v. Wilkie*,
    588 U.S. 558 (2019)..........................................................................................................9

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)........................................................................................................10

*Malone v. Yee*,
    588 F. App'x 718 (9th Cir. 2014) ..............................................................................15, 17

*Maynard v. Bd. of Educ. of Wayne Cty.*,
   178 W. Va. 53 (1987) ...................................................................................................18

*McFadden v. 3M Co.*,
   2015 WL 905083 (E.D. Mo. Mar. 3, 2015) .................................................................11

*Midwestern Mach. Co. v. Nw. Airlines, Inc.*,
   392 F.3d 265 (8th Cir. 2004) ......................................................................................18

*Mullins v. Ethicon, Inc.*,
   147 F. Supp. 3d 478 (S.D. W. Va. 2015) .....................................................................6

*Mutual Pharmaceutical Co. v. Bartlett*,
   570 U.S. 472 (2013)...................................................................................................5, 6

*New York v. Meta Platforms, Inc.*,
   66 F.4th 288 (D.C. Cir. 2023)......................................................................................18

*Pattison v. Omnitrition International, Inc.*,
   2018 WL 2984820 (W.D. Wash. June 14, 2018)..........................................................16

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011)...................................................................................2, 4, 5, 6, 10

*Roberts v. W. Va. Am. Water Co.*,
   221 W. Va. 373 (W. Va. 2007).................................................................................12, 17

*SaurikIT, LLC v. Apple, Inc.*,
   2023 WL 8946200 (9th Cir. Dec. 28, 2023) ...............................................................15

*Schoonover v. Dollar Gen. Corp.*,
   2024 WL 4823276 (S.D. W. Va. Oct. 9, 2024) ...........................................................4

*Strauss v. Angie's List, Inc.*,
   2019 WL 399910 (D. Kan. Jan. 31, 2019)...................................................................19

*Vorchheimer v. Philadelphian Owners Ass'n*,
   903 F.3d 100 (3d Cir. 2018)..........................................................................................9

*Warner v. Sun Ship, LLC*,
   2012 WL 1521866 (E.D. Pa. Apr. 30, 2012) ..............................................................18

*State ex rel. Webb v. W. Va. Bd. of Med.*,
   203 W. Va. 234 (W. Va. 1998)......................................................................................18

*White v. Daniel*,
   909 F.2d 99 (4th Cir. 1990) ....................................................................................18, 19

*Wilhelm v. Tunnel Ridge, LLC*,
   2025 WL 658209 (W. Va. Ct. App. Feb. 28, 2025)................................................13, 17

*Wilson v. Giesen*,
   956 F.2d 738 (7th Cir. 1992) ........................................................................................13

iv

*Wos v. E.M.A. ex rel. Johnson*,
    568 U.S. 627 (2013)........................................................................................9

*Wyeth v. Levine*,
    555 U.S. 555 (2009)........................................................................................6

*Z Technologies Corp. v. Lubrizol Corp.*,
    753 F.3d 594 (6th Cir. 2014) ........................................................................17

*Zachair, Ltd. v. Driggs*,
    965 F. Supp. 741 (D. Md. 1997)......................................................................6

## Statutes

29 U.S.C. § 671.................................................................................................8

30 U.S.C. § 803.................................................................................................8

30 U.S.C. § 811.................................................................................................8

W. Va. Code § 22-3-2......................................................................................13

W. Va. Code § 46A-6-102.................................................................................4

W. Va. Code § 46A-6-104...............................................................................14

## Regulations

30 C.F.R. § 72.700............................................................................................8

42 C.F.R. § 84.1...........................................................................................6, 8

42 C.F.R. § 84.33.........................................................................................5, 8

60 Fed. Reg. 30336 (June 8, 1995) ...................................................................8

**INTRODUCTION**

The State's brief confirms that this Court should dismiss the State's complaint because it is both preempted and time-barred.  3M respectfully submits that the best and most efficient course of action is for the Court to retain jurisdiction over this case for the reasons set out in 3M's opposition to the motion to remand, Dkt. 24, and simultaneously dispose of this case in its entirety. This suit is a misguided attempt by the State to override federal regulations, and it comes decades too late.

***The State's Claim Fails On The Merits As A Matter Of Law.***  The State's claim under the West Virginia Consumer Credit and Protection Act (the Act), challenging the labeling and sale of 3M's 8210 respirator, is foreclosed as a matter of law by the federal regulatory scheme.  Mot. 5–13.  3M asserted three grounds for dismissal on the merits; the State ignores one argument entirely and fails to rebut the two conflict-preemption grounds pressed by 3M.  Each independently requires dismissal.

*First*, 3M maintained that labeling a product in conformity with federal law cannot, as a matter of law, be "deceptive" or "unfair" under the Act.  Mot. 12–13.  The State does not respond to that argument at all.  This is, by itself, a sufficient ground on which to dismiss the State's claim.

*Second*, as to impossibility preemption, the State does not dispute that the 8210 is a federally certified "N95" respirator that meets the requirements set by the National Institute for Occupational Safety and Health (NIOSH), or that the Mine Safety and Health Administration (MSHA) approves 8210s for use in coal mining.  (In fact, the State's brief ignores MSHA—and 3M's arguments about MSHA preemption—entirely.  This is another reason to grant 3M's motion outright.) Nor does the State dispute that NIOSH imposes quality control and labeling requirements on the 8210.  Instead, the State argues that its claim does not conflict with federal law because, in the

State's view, 3M would be free to add "supplemental" information on the 8210 over and above what federal law requires. Setting aside that the State demands that 3M include information that contradicts NIOSH's labeling requirements, 3M would need NIOSH approval to modify *in any way* the label on the 8210. The State does not contend otherwise. Under the Supreme Court's decision in *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011), an alleged state-law duty is preempted as a matter of law where a defendant would be required to obtain federal regulatory approval to comply with the proposed state standard. *Id.* at 623–24. The State strains to limit *PLIVA* to its facts, but it is clear that the Court's central holding bars the State's claims here.

*Finally*, as to obstacle preemption, 3M argued that the representations the State asserts 3M must add to the 8210—"IGNORE NIOSH" or "NOT FOR USE IN COAL MINING," Compl. ¶¶ 160–61—pose an obstacle to the objectives of the NIOSH and MSHA regulatory regimes, specifically preventing work-related injuries and user confusion. Mot. 9. The State claims that "3M cannot identify any Congressional purpose that supports its preemption argument." Opp. 1. But this ignores 3M's arguments about the ways in which NIOSH and MSHA regulations effectuate Congressional purposes. Faced with the inescapable reality that a purported state labeling requirement demanding that users "IGNORE" the federal regulator is a clear obstacle to federal law, the State attempts to hide behind a grab-bag of incorrect legal propositions, cherry-picked regulatory guidance, and inapposite caselaw. Each of the State's arguments is without merit.

**The State's Claim Is Also Time-Barred.** The State's claim is also untimely under the Act's four-year statute of limitations. Mot. 13–20. The State does not dispute that 3M has been using the same labeling and making the same representations about 8210 respirators since the late 1990s; nor does the State dispute that it has been aware of the basis for its claim since that time. Instead, the State contends that its claim is timely as to sales 3M has made since December 2021. But the

2

State does not cite a single case in which a court has held that mere continuing sales of a product, without more, revive the plaintiff's claim. To the contrary, courts routinely hold that where a plaintiff challenges an aspect of a product (including its label), the alleged violation is complete—and the statute of limitations begins to run—when the product is first offered for sale. Here, that happened decades ago.

The State's argument that its decades-long delay in bringing this case should nonetheless be countenanced because it is trying to "protect the public" cannot be reconciled with the law or common sense. The State does not explain why, if it was really so concerned about the public's welfare, it did not bring suit a quarter-century ago. In fact, it appears that the State was prompted to sue 3M over its 8210 respirators not out of concern for the public, but instead to gain leverage in its separate litigation over 3M's 8710 respirator that has been pending in State Court since 2003. *See* Dkt. 1-2. Allowing the State to avoid the statute of limitations would only reward its procedural gamesmanship.

The State's claims should be dismissed.

## ARGUMENT

### I.     The Federal Regulatory Scheme Forecloses The State's Claim.

#### A.     Liability Under The Act Cannot Rest On The Assertion That Statements Consistent With Federal Requirements Are Misrepresentations.

The State does not offer any response to 3M's argument that the State fails to state a claim because the Act does not and cannot impose liability for statements that are consistent with federal requirements. Mot. 12–13. The 8210 *is* approved by NIOSH. 3M's use of a label to that effect cannot support liability both because the label is truthful and because the label is required by federal regulations; as a matter of law, 3M's compliance with those regulations does not constitute "deception, fraud, false pretense . . . or the concealment . . . of any material fact" prohibited by the

Act. W. Va. Code § 46A-6-102(7)(M). Labeling is "presumptively lawful and not false or misleading." *Keunzig v. Hormel Foods Corp.*, 505 F. App'x 937, 939 (11th Cir. 2003).

The Court may and should "construe[]" the State's "silence on that issue . . . as a concession" to 3M's arguments, and it may dismiss the State's claim on this ground alone. *Folse v. Kanawha Cnty. Comm'n*, 2023 WL 2985150, at *5 (S.D. W. Va. Jan. 18, 2023), *report and recommendation adopted*, 2023 WL 2644278 (S.D. W. Va. Mar. 27, 2023) (Berger, J.). "'When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the case.'" *Schoonover v. Dollar Gen. Corp.*, 2024 WL 4823276, at *3 (S.D. W. Va. Oct. 9, 2024), *report and recommendation adopted*, 2024 WL 4818341 (S.D. W. Va. Nov. 18, 2024) (Berger, J.). That result is warranted here.

## B.  Impossibility Preemption And Obstacle Preemption Bar The State's Claim.

In addition, the State's claim is preempted by federal law because it is irreconcilable with the federal regulatory scheme. As the State acknowledges, conflict preemption may arise in two circumstances: "from a direct conflict between state and federal law, such that compliance with both is impossible . . . or because a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Opp. 5 (internal quotation marks omitted). The State's claim is preempted under both theories.

***Impossibility Preemption.*** The State grants that impossibility preemption exists when "compliance with both federal and state regulations is a physical impossibility." Opp. 6. But the State fails to acknowledge that impossibility preemption also applies where a "party cannot independently satisfy . . . state duties" without "permission and assistance" from a "federal agency." *PLIVA*, 564 U.S. at 623–24. That is the case here. NIOSH and MSHA have established a federal regime for ensuring the safety of respirators. NIOSH demands that 3M stamp the 8210 respirator

4

with specific information, 42 C.F.R. § 84.33(b), and requires 3M to submit "[f]ull-scale reproductions of approval labels and markings . . . together with instructions for the use . . . of the respirator" to NIOSH "for approval" before they are implemented, *id.* § 84.33(a).  Because 3M would have to go to NIOSH to request permission to comply with the State's novel contention that 3M must alter the label on the respirator, the State's claim is preempted.

In the face of this clear rule, the State attempts to backtrack on its theory of liability.  The State variously says that 3M could comply with both the State's novel labeling requirement and federal requirements by using a *different* label that does not say "IGNORE NIOSH," Opp. 13–14, or that 3M could have "supplement[ed] warnings" on the "8210 itself," *id.* at 13, because NIOSH "impose[s] only minimum requirements," *id.* at 9 (internal quotation marks omitted).  The State's retreat from the allegations in its complaint does not save its claim.  In order to provide *any* warning on the 8210 respirator or in its "instructions for . . . use" that departs from the language approved by the federal government, 3M would have to secure permission from NIOSH.  42 C.F.R. § 84.33(a).  Because 3M cannot on its own provide a "different, stronger label" or user instructions than what "[it] actually used," *PLIVA*, 564 U.S. at 617, the State's claim would still be preempted under the theory the State now presses in its opposition.

The State further argues that *PLIVA* "does not help" 3M because this case does not involve drug labels.  Opp. 14.  But that reading of *PLIVA* ignores its central holding.  The state-law claims in *PLIVA* were preempted because the manufacturers could not "independently satisfy . . . state duties" without "permission and assistance" from a "federal agency."  564 U.S. at 623–24.  The Court reached a similar holding in *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472 (2013), a case 3M cited (*see* Mot. 8) that the State does not attempt to distinguish.  *Mutual Pharmaceutical* held that the plaintiff's claim was preempted because it would have been "impossible for [the

defendant] to comply with both its state-law duty to strengthen the warnings on [its] label and its federal-law duty not to alter [the] label" without intervention by the federal agency. 570 U.S. at 480. That fact distinguished *PLIVA* and *Mutual Pharmaceutical* from the primary case on which the State relies, *Wyeth v. Levine*, 555 U.S. 555 (2009). There, the Supreme Court found the relevant FDA labeling regime did not preempt state law because the regulatory scheme at issue "permit[ted] a manufacturer to make certain changes to its [drug] label *before* receiving the agency's approval," so the drug manufacturer could "*unilaterally strengthen its warning*" to comply with state law. *Id.* at 568, 573 (emphasis added). By contrast, the defendants in *PLIVA* and *Mutual Pharmaceutical* could not unilaterally comply with state law. *PLIVA*, 564 U.S. at 623; *Mutual Pharmaceutical*, 570 U.S. at 480. The same is true for 3M, and for that reason, the State's claim is foreclosed by impossibility preemption.[1]

In any event, the State cannot "amend [its] complaint on the fly." *W. Va. ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 196, n.4 (4th Cir. 2025). The State is "bound by the allegations contained in [its] complaint and cannot, through the use of motion briefs, amend the complaint." *Eagon v. Cabell Cnty. Emergency Med. Servs.*, 2023 WL 8853727, at *4 (S.D. W. Va. Dec. 21, 2023) (quoting *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997),

---

[1] The district court's decision in *Mullins v. Ethicon, Inc.*, 147 F. Supp. 3d 478 (S.D. W. Va. 2015), does not suggest a different result. There, the plaintiff argued that a manufacturer had violated its state-law duty to ensure its products are "reasonably safe." *Id.* at 481. The manufacturer, in turn, asserted that "FDA's 510(k) premarket clearance process" preempted the manufacturer's state-law obligations. *Id.* at 479. The court rejected this argument on the ground that the "federal clearance process" did not address, and in fact was "unrelated" to, safety. *Id.* at 481. And, critically, "there was no federal law prohibiting design changes" to the product at issue. *Id.* at 485. Here, unlike in *Mullins*, NIOSH's regulations expressly require 3M to submit any proposed changes to the label or the user instructions to NIOSH *before* making any change, *supra* 4–5, and, unlike in *Mullins*, one of the core purposes of that pre-alteration review is user safety, *see* 42 C.F.R. § 84.1(c).

6

*aff'd*, 141 F.3d 1162 (4th Cir. 1998)).  Its claims, as pleaded, are preempted, which is the end of the inquiry.

**Obstacle Preemption.**  The State acknowledges that a state law is also preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Opp. 5 (internal quotation marks omitted).  Obstacle preemption bars the State's suit because the State's theory is that 3M must tell consumers the exact opposite of what NIOSH says and requires—that the 8210 respirator is not "effective" for the very uses NIOSH and MSHA authorize.  Mot. 3–4.  Telling consumers that the 8210 is not in fact effective for the purposes NIOSH and MSHA say it is, which is what the State insists 3M must do, "would be contrary" to the regulator's approval.  *Caplinger v. Medtronic, Inc.*, 921 F. Supp. 2d 1206, 1222 (W.D. Okla. 2013), *aff'd*, 784 F.3d 1335 (10th Cir. 2015).  The State's arguments about why 3M was supposedly required to add a warning that contradicted the label mandated by NIOSH and MSHA fail for multiple reasons.

*First*, the State argues that "3M cannot identify any Congressional purpose that supports its preemption argument."  Opp. 1, *see also id.* at 7–8.  But that argument makes no sense, as Congress manifests its purpose first and foremost in the laws it enacts and the regulations it empowers agencies like NIOSH to issue.  As 3M convincingly demonstrated in its opening brief, "under the regime Congress created for respirator approval, NIOSH and MSHA—not the State— are the leading regulators," Mot. 10, and 3M described the ways in which the MSHA and NIOSH regulatory regimes effectuate Congressional purposes, *id.* at 6–7, 9–10.

The State's opposition remarkably ignores MSHA completely—and, in particular, 3M's arguments that MSHA's adoption of NIOSH approval as the governing safety standard for respirators preempts state claims, *see* Mot. 1, 5–7, 9–11.  MSHA is the preeminent federal authority

7

regulating U.S. coal mines and enforcing safety requirements in coal mines.  30 U.S.C. § 803; *id.* § 842(h).  Congress assigned MSHA the duty to set "mandatory standards" to ensure "attainment of the *highest degree* of health and safety protection for the miner."  30 U.S.C. § 811(a)(6)(A) (emphasis added).  Pursuant to that authority, MSHA has "plac[ed] responsibility for certifying most respirators" for use in mining "with NIOSH."  60 Fed. Reg. 30336, 30339 (June 8, 1995).  NIOSH approved user instructions stating that the 8210 helps reduce exposure to certain airborne "[p]articles such as . . . coal."  Dkt. 1-6 at 128, 134.  The State never explains how it could be consistent with this regulatory scheme or its purposes for 3M to include alleged "supplemental" material informing users that 8210s are "NOT FOR USE IN COAL MINING," Opp. 10, 14, when MSHA approves the use of 8210s precisely in that setting.  This requires a finding of obstacle preemption.

Together, the regulatory schemes set out by NIOSH and MSHA serve two Congressional purposes relevant here:  preventing work-related injuries, based on a rigorous testing and approval regime, and conveying specific information to avoid user confusion.  *See* Mot. 9.  NIOSH developed the "respiratory protection requirements" with which approved respirators must comply as a means of preventing work-related injuries.  42 C.F.R. § 84.1(a), (c); *see also* 29 U.S.C. § 671(d).  Federal occupational health standards imposed by the Occupational Safety and Health Administration (OSHA) or MSHA advance the same purpose by requiring use of "[r]espiratory equipment approved by NIOSH."  30 C.F.R. § 72.700(a).  And the regulations require the provision of specific information to avoid user confusion by requiring respirators to adhere to strict labeling requirements that communicate to users that the respirators comply with NIOSH's detailed performance specifications.  *See* 42 C.F.R. § 84.33.

8

Whether the State demands that 3M specifically instruct users to "IGNORE NIOSH" or more generally seeks some other warning, Opp. 14, it most certainly would "obstruct" the Congressional purposes reflected in the NIOSH and MSHA regulatory schemes. *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 828 (4th Cir. 2010). NIOSH approval clearly communicates to users that approved respirators are safe and effective for their intended uses. Requiring 3M to add the State's proposed warnings would lead to significant uncertainty for users about whether the 8210—or any approved respirator—meets NIOSH specifications, and whether the 8210 may be used for the purposes approved by federal regulators.

As a fall back, the State suggests that some presumption against preemption applies here. *See* Opp. 6–7. Not so. Any such presumption is overcome when, "under the circumstances of th[e] particular case," the state law "conflict[s] with," is "contrary to," or is "inconsisten[t]" with the "objectives of Congress." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000). "Congress would not want" the kind of conflict the Court confronts here: a state-law labeling requirement, particularly one fabricated in a decades-late civil suit, that urges users to "IGNORE" the very federal regulators vested with authority to ensure aspects of workplace and mining safety. *Id.*

*Second*, the State invokes a 2010 letter from OSHA contending that OSHA "said in 2010 that there is no 'NIOSH preemption' of state-law respirator claims." Opp. 3. That agency letter purporting to interpret the law is entitled to no deference whatsoever. *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 643 (2013) ("[O]pinion letters[,] . . . policy statements, agency manuals, and enforcement guidelines" "do not warrant . . . deference"); *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018) (an agency "guidance letter . . . does not merit . . . deference"). That is all the more true when there is some tension between agency interpretations. *Kisor v. Wilkie*, 588 U.S. 558, 579 (2019) (suggesting courts generally should not defer to agency

9

construction "conflict[ing] with prior" agency interpretations (alteration in original)). In a preemption analysis, the Court must make its own assessment of the text and "independently . . . consider national interests and their putative conflict with state interests." *Columbia Venture*, 604 F.3d at 830; *see also PLIVA*, 564 U.S. at 613 n.3 (declining to "defer to an agency's ultimate conclusion about whether state law should be preempted"). This Court is tasked with interpreting the law afresh. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024).

In all events, the State inexcusably leaves out the portion of the letter where OSHA went on to clarify that there is no preemption *only* "so long as the information" in the label proposed under state law "*does not conflict with the approved labeling*." Dkt. 27-4 at 2 (emphasis added). That language is an express recognition that a conflict between a proposed state-law labeling requirement and the federally approved labels *would* give rise to preemption. That recognition is consistent with an earlier 2008 OSHA letter finding that NIOSH approval *did*, "under certain circumstances" give rise to "conflict preemption" and "preclude" state law claims. Ex. 1, Letter from Thomas M. Stohler, Acting Assistant Secretary of OSHA, to Daniel K. Shipp at 3 (Dec. 31, 2008), Doc. #1440021, *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, Case No. 12-1229 (D.C. Cir. June 6, 2013). The 2008 OSHA letter further observed that "it is unlawful to change the characteristics of a respirator without further NIOSH approval." *Id.* A conflict is squarely implicated here because the State demands that 3M instruct users to ignore the very label NIOSH requires. The State further insists 3M cease representing that the 8210 may be used in the very application—protection against coal—for which NIOSH and MSHA have approved it. It is difficult to imagine a more direct conflict between federal and state standards.

*Finally*, the State blusters that 3M "already lost" or "did not even bother raising" this preemption defense in other cases. Opp. 4. But that argument collapses under scrutiny. The State

10

invokes *McFadden v. 3M Co.*, 2015 WL 905083 (E.D. Mo. Mar. 3, 2015), a product-liability case against 3M and Mine Safety Appliances (MSA), in which the plaintiff claimed injury from allegedly defective respirators. *Id.* at \*1. MSA moved to dismiss, arguing that the tort claims against MSA were preempted by federal law. *Id.* The court rejected this argument because MSA offered no "analysis" of the "specific standards governing respirators." *Id.* at \*3. The court reasoned that "the agency process *in and of itself*" did not "preemp[t] tort claims under the OSH Act." *Id.* at \*4 (emphasis added).

Nothing in *McFadden*'s reasoning or holding defeats preemption here. Even in rejecting MSA's preemption argument, *McFadden* recognized that preemption *does* arise when a state-law claim "actually conflict[s] with federal regulations." 2015 WL 905083 at \*2. And in this case, 3M has argued that a reticulated federal regulatory scheme "forbid[s]" alterations to the NIOSH-approved label, markings, and instructions for use on the 8210, and that OSHA or MSHA-imposed health standards "require" use of respirators approved by NIOSH, including in coal mining. *Id.* The State's claims "actually conflict," *id.*, with that scheme: the State says that 3M should have told users to ignore NIOSH's (and thus MSHA's) approval of the 8210 respirator, and that 3M "should have provided a warning on the respirator itself akin to 'NOT FOR USE IN COAL MINING/ IGNORE NIOSH COAL APPROVAL.'" Compl. ¶ 160; *see also id.* ¶ 161 (same for respirator box). A more direct conflict is hard to conceive, and nothing in *McFadden* supports the State's efforts to countermand federal approval with its lawsuit.

## II.    The Statute Of Limitations Bars The State's Claim As A Matter Of Law.

The State does not dispute that the statute of limitations that governs its claim began running decades ago, when 3M first sold 8210 respirators. *See* Compl. ¶¶ 28–29. 3M has included the same labeling on 8210 respirators, and has made the same representations about those respirators, since they were approved by regulators and placed on the market in the late 1990s. *See*

11

Compl. ¶¶ 8, 128–32, 150–54, 172.  The State nevertheless contends that its claim is not time-barred under the applicable four-year statute of limitations because 3M's sales of the respirators constitute a "continuing violation," such that the State can recover for sales of 8210 respirators made "after December 2021."  Opp. 16; Dkt. 26 at 12.  But the State does not meaningfully engage with 3M's argument that there are two fundamental reasons the continuing-violation doctrine does not apply here:  (1) the doctrine does not apply under the Act, and (2) mere continuing *sales* do not constitute a continuing *violation*.  *See* Mot. 17–20; Opp. 15–19.  Instead, the State argues that applying the statute of limitations as written would reduce its ability to protect consumers.  In fact, the opposite is true: incentivizing the State to bring consumer-protection claims without unreasonable delay after it becomes aware of a supposed violation of the Act can only help consumers.  It is hard to see how excusing the State's two-decade-plus delay in bringing its claim could possibly frustrate consumer-protection efforts.

### A.    The Continuing-Violation Doctrine Is Inapplicable.

The continuing-violation doctrine does not apply here for two reasons.  It does not apply to claims brought under the Act, full stop; and it does not apply to the claim the State brings here because continuing sales do not constitute a continuing violation.

*First*, the continuing-violation doctrine does not apply to claims brought under the Act because: (i) its application to the Act finds no support in the case law; and (ii) the continuing-violation doctrine serves no purpose here and would render redundant the discovery rule, which already can extend the time in which the State may bring a claim under the Act.  *See* Mot. 17–20.

The State does not cite any case in which a court has applied the doctrine to the Act, and this Court ought not be the first to do so.  The West Virginia Supreme Court of Appeals has cautioned against "overly broad" applications of the doctrine, *Roberts v. W. Va. Am. Water Co.*, 221 W. Va. 373, 378–79 (W. Va. 2007), and the West Virginia Court of Appeals has heeded that

admonition—for instance, by declining to apply the doctrine to violations of the Surface Coal Mining and Reclamation Act "without additional guidance from" the Supreme Court of Appeals, *Wilhelm v. Tunnel Ridge, LLC*, 2025 WL 658209, at *9 n.14 (W. Va. Ct. App. Feb. 28, 2025).  In pressing for the unprecedented application of the continuing-violation doctrine here, the State contends, without citation, that the doctrine should apply to any statute whose purpose is to "protect West Virginia citizens."  Opp. 17.  But the Surface Coal Mining and Reclamation Act falls into that category—it is aimed at protecting the "economic and social well-being of the citizens of the State of West Virginia," W. Va. Code § 22-3-2—and yet the court in *Wilhelm* had no trouble holding that the continuing-violation doctrine does not apply under that act, 2025 WL 658209, at *9 n.14.

As 3M demonstrated, there is particularly little reason to apply the continuing-violation doctrine to the Act because the discovery rule applies to claims brought under the Act, tolling the four-year limitations period until the State has notice of an alleged violation.  Mot. 19 (citing *State ex rel. 3M Co. v. Hoke*, 244 W. Va. 299, 307 (W. Va. 2020)).  The State responds by merely noting that the Supreme Court of Appeals has not *foreclosed* application of the continuing-violation doctrine to claims brought under the Act, Opp. 16–17, but it does not explain what purpose applying the doctrine to the Act would achieve, given that the discovery rule already applies.  Courts have recognized that the doctrine serves little purpose where the discovery rule applies; the doctrine "is not suited to cases . . . where the harm is definite *and discoverable*, and nothing prevented the plaintiff from coming forward to seek redress."  *Wilson v. Giesen*, 956 F.2d 738, 743 (7th Cir. 1992) (emphasis added); *see also Chickasaw Tel. Co. v. Sw. Bell Mobile Sys., Inc.*, 113 F.3d 1245, at *5 (10th Cir. 1997) (same).

*Second*, even where the doctrine is otherwise applicable (though it is not here, as explained

13

above), it is well established that continued sales of a product do not constitute ongoing wrongful conduct, and do not restart the limitations period. *See* Mot. 19–20. The State notes that a violation of the Act is complete, and the statute of limitations begins to run, "*when the requisite elements of the cause of action occurred*." Opp. 16 (quoting *Hoke*, 244 W.Va. at 299). Here, that happened way back in the 1990s. The State nonetheless suggests that, as applied to this case, a statutory violation is not complete until a consumer buys an 8210 respirator. *Id.* at 17. However, consumer injury is not an element of a claim brought by the State under the Act. *Hoke*, 244 W. Va. at 313. Instead, the State need only show that 3M engaged in "[u]nfair methods of competition and unfair or deceptive acts or practices." W. Va. Code § 46A-6-104. The Attorney General himself recently made this point in *Hoke*, arguing that the trial challenging the 8710 respirator under the Act "would focus narrowly on the allegations regarding the defendants' conduct rather than on the varying injuries to thousands of individuals" because the State did not need to prove injury. 244 W. Va. at 305. By the State's own telling, then, injuries to consumers are irrelevant to the issue of 3M's liability. This means that the alleged violation was complete when 3M first marketed 8210 respirators in West Virginia, and that is when the limitations period began to run.

The cases the State cites are all inapposite because they concerned defendants who allegedly neglected to perform an ongoing duty. The defendants in *Graham v. Beverage*, 211 W. Va. 466 (2002), allegedly engaged in "continuing wrongful conduct" by "negligently failing to take action with regard to correcting the alleged inadequacies of" a drainage system they had installed. *Id.* at 477. *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001), involved the alleged continued deliberate indifference to an inmate's medical problems by prison officials, in violation of the inmate's constitutional rights. *Id.* at 317. And *Cummings v. GEO Group, Inc.*, 2024 WL 250795 (E.D. Va. Jan. 23, 2024), similarly involved allegations of deliberate indifference by prison

14

officials to repeated abuse of an inmate by gangs.  *Id.* at *3.

Here, by contrast, the State does not allege that 3M neglected to perform any ongoing duty. Instead, the State challenges a decision 3M made about how to represent the 8210 respirator's effectiveness in the 1990s, when the respirator was first approved by regulators and placed on the market, and alleges that 3M has used the same label and made the same representations about the 8210 ever since.  *See* Compl. ¶¶ 8, 128–32, 150–54, 172.  A "continuation and reaffirmation of [an] original decision" like 3M's labeling decision does not constitute a continuing violation. *Malone v. Yee*, 588 F. App'x 718, 720 (9th Cir. 2014).

Tellingly, the State does not cite a single case in which a court held that a plaintiff's claim was timely because the defendant continued to sell a product after the statute of limitations had run.  The reason is not hard to identify:  courts routinely hold that, where a plaintiff challenges some aspect of a product, the alleged violation is complete—and the statute of limitations begins to run—when the product is first offered for sale.  Repeat sales do not constitute an ongoing violation.  Courts have applied this rule to a range of claims, including alleged misrepresentations, unfair practices, and copyright violations.  For example:

- In *SaurikIT, LLC v. Apple, Inc.*, 2023 WL 8946200 (9th Cir. Dec. 28, 2023), the Ninth Circuit rejected the argument that "Apple engages in an overt act" in violation of consumer-protection laws "that resets the statute of limitations every time it sells a new iOS device with a warranty agreement," reasoning that the statute of limitations instead started running when Apple first offered the challenged warranty because the warranty had not changed in the intervening years.  *Id.* at *1.  The State tries to distinguish *SaurikIT* on the ground that "the alleged misconduct centered on the fixing of a 2008 warranty term, 12 years before th[e] suit was filed," Opp. 19, but this case is on all fours—3M's alleged misconduct relates

15

to product labeling that it developed over 25 years before the suit was filed.

- In *Pattison v. Omnitrition International, Inc.*, 2018 WL 2984820 (W.D. Wash. June 14, 2018), the court held that the continuing-violation doctrine did not save the plaintiff's consumer-protection suit despite the defendant's continued sales of the allegedly misrepresented product. *See id.* at *4–5, *4 n.5. In that case, the plaintiff contended that the defendant falsely claimed its weight-loss supplement would cause "rapid and safe weight loss." *Id.* at *1. Though the statute of limitations was four years and the plaintiff brought her suit more than four years after her first purchase, she argued that her claim was timely because she had repeatedly purchased the product up until she sued. *Id.* at *4 n.5. The court disagreed, holding that her claims as to the original sale and the subsequent sales were all barred. Because the "subsequent sales" were "based off of the same statements that [the defendant] allegedly made in 2011 and that [the plaintiff] relied upon for her first purchase," "these later sales cannot revive an otherwise untimely claim." *Id.*

- The Fifth Circuit applied the same rule to hold that a copyright infringement claim was untimely. *Daboub v. Gibbons*, 42 F.3d 285, 290 (5th Cir. 1995). The initial alleged infringement was outside the statute of limitations, but the plaintiff contended that his claim was nevertheless timely because the defendant "took another step in its tortious behavior" "each time [defendant] sold an album . . . and every time the [challenged] song was broadcast." *Id.* The Fifth Circuit rejected this argument, concluding that "the tort was committed when [defendant] copyrighted the song"—not when the song was replayed. *Id.* at 291. Otherwise, the copyright statute's limitations provision "would *never* apply"— "[i]f the song were played once on the radio . . . the case would be brought within the statute of limitations and the tort resurrected." *Id.* (emphasis added).

16

- In *Z Technologies Corp. v. Lubrizol Corp.*, 753 F.3d 594 (6th Cir. 2014), the Sixth Circuit held that "price increases following a merger or acquisition" do not restart the statute of limitations because "the cause of harm is the merger itself," and later sales were merely "'ripples' caused by the initial injury." *Id.* at 598–600.

The rule set out in these cases applies equally here:  the State challenges a decision 3M made about how to represent the 8210 respirator's effectiveness in the 1990s, when the respirator was first approved by regulators and placed on the market, and alleges that 3M has included the same label on the 8210 and made the same representations about the 8210 ever since.  *See* Compl. ¶¶ 8, 128–32, 150–54, 172.  Sales of the 8210 respirators began in the 1990s on the watch of the late Attorney General Darrell McGraw, who in 2003 initiated a lawsuit on behalf of the State (using the same outside lawyers as in this case) against the 8710 respirator—years after sales of that model had already ceased, and years after sales of the 8210 had already begun.  Now, two decades and two Attorneys General later, the State challenges the 8210 for the first time, claiming that the four-year clock resets with every new sale. That would effectively nullify the statute of limitations the legislature has imposed, and cannot be right.

That conclusion follows directly from the Supreme Court of Appeals' holding that the continuing-violation doctrine does not apply where the plaintiff merely alleges "damages emanating from a discrete tortious act," rather than "continuing tortious conduct." *Roberts*, 221 W. Va. at 378.  For the doctrine to apply, "the act constituting the violation, rather than simply the resulting damages, must be ongoing." *Wilhelm*, 2025 WL 658209, at *9 n.14.  A "continuation and reaffirmation of [an] original decision" does not constitute a continuing violation. *Malone*, 588 F. App'x at 720.  3M's decision about how to label and describe its product is precisely the sort of discrete act the Supreme Court of Appeals described as not restarting the limitations period.

**B.      The State's Policy Argument Does Not Change The Outcome.**

The main thrust of the State's rebuttal to 3M's arguments about why the continuing-violations doctrine does not apply here rests on the misguided policy argument, untethered from legal authority, that its ability to protect the public would be compromised if it were unable to bring claims over any product that continues to be sold. Opp. 17–18. As noted above, the opposite is true: requiring the State to bring claims within the statute of limitations, without relying on the continuing-violations doctrine to resuscitate stale claims, would incentivize it to act promptly to protect the public. When suits are designed to "correct public wrongs," they should be brought "as soon as possible to stop (or at least compensate) harm to the public." *Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 272 (8th Cir. 2004). The State offers no reason why it waited over 25 years to bring this case.

**III.     Laches Bars The State's Claim For Injunctive Relief.**

The State's request for injunctive relief fails for an additional reason: laches. Laches bars claims when the plaintiff has "delayed inexcusably or unreasonably in filing suit" after it "discovered the facts giving rise to [its] cause of action." *White v. Daniel*, 909 F.2d 99, 102, 104 (4th Cir. 1990). Tellingly, the State does not contest that this element is satisfied here. Instead, it offers technical reasons why, in its view, laches should not apply. Opp. 19–20. The States is wrong on all counts. Laches may bar claims brought by state governments. *State ex rel. Webb v. W. Va. Bd. of Med.*, 203 W. Va. 234, 238–39 (W. Va. 1998); *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 301 (D.C. Cir. 2023). Laches may bar claims that would not be barred by the statute of limitations. *Maynard v. Bd. of Educ. of Wayne Cty.*, 178 W. Va. 53, 59–60, 62 (1987). And while laches often may not be amenable for resolution at the outset of a case, in some cases it is "appropriate to declare laches based upon the pleadings." *Id.* at 62 n.11; *see also Warner v. Sun Ship, LLC*, 2012 WL 1521866, at *1 (E.D. Pa. Apr. 30, 2012), *aff'd*, 507 F. App'x 107 (3d Cir.

18

2012) (granting motion to dismiss on laches defense); *Strauss v. Angie's List, Inc.*, 2019 WL 399910, at *3–4 (D. Kan. Jan. 31, 2019) (same).  This is one of those cases, because the State does not contest that it has "delayed inexcusably or unreasonably in filing suit."  *White*, 909 F.2d at 102.  Indeed, the State's more than 25-year delay speaks for itself.

The State also argues that laches does not apply when the defendant has "unclean hands," Opp. 20, but it has done nothing to explain why 3M supposedly has "unclean hands."  The State seems to mean simply that 3M allegedly violated the law, but the plaintiff in every suit alleges that the defendant violated the law.  If this circular reasoning were enough to prevent the application of laches, the doctrine would never apply.  Nor can there be any argument that 3M's hands are "unclean" when it comes to sales of the 8210 respirator:  it is a gold-standard N95 respirator that meets strict federal regulatory standards for performance and quality.  *See* Compl. ¶¶ 28–29; Not. of Removal ¶¶ 1, 20–24.  Laches bars the State's claim for injunctive relief.

## CONCLUSION

For the foregoing reasons, and those set forth in 3M's opening brief, the State's untimely case should be dismissed with prejudice.

Dated: February 26, 2026                    Respectfully submitted,


/s/ Bryant J. Spann
Bryant J. Spann, Esq. (WV Bar No. 8628)
Robert H. Akers, Esq. (WV Bar No. 9622)
THOMAS COMBS & SPANN, PLLC
300 Summers Street, Suite 1380
Charleston, WV 25301
Telephone:  (304) 414-1800
BSpann@tcspllc.com
RAkers@tcspllc.com

/s/ Lauren Goldman
Lauren Goldman, *pro hac vice*
Justine Goeke, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

Steven R. Ruby, Esq. (WV Bar No. 10752)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower
707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323

*Counsel for Defendant 3M Company*

20

## CERTIFICATE OF SERVICE

I, Bryant J. Spann, hereby certify that on February 26, 2026, a copy of the foregoing was served on counsel for Plaintiff by electronic filing through the CM/ECF system.

Jace H. Goins, Esq., Chief Deputy Att'y
Gen., (WV Bar # 6894)
Vaughn T. Sizemore, Esq., Deputy Att'y
Gen., (WV Bar # 8231)
OFFICE OF THE ATTORNEY GEN-
ERAL
Building 1, Room 26-E
Capitol Complex
Charleston, WV 25305
Telephone: (304) 558-2021
Facsimile: (304) 558-0140

J. Timothy DiPiero (W.Va. Bar # 9616)
Lonnie C. Simmons (W.Va. Bar # 3406)
Robert M. Bastress III (W.Va. Bar
# 9616)
DiPIERO SIMMONS
McGINLEY BASTRESS, PLLC
P.O. Box 1631
Charleston, WV 25326
Telephone: (304) 342-0133
Facsimile: (304) 342-4605
Rob.bastress@dbdlawfirm.com

*Counsel for The State*

Dated: February 26, 2026

/s/ Bryant J. Spann
Bryant J. Spann, Esq. (WV Bar No. 8628)

*Counsel for Defendant 3M Company*

21