# UNITED STATES DISTRICT COURT
## IN THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

**STATE OF WEST VIRGINIA,**
*ex rel.* **JOHN B. McCUSKEY,**
**ATTORNEY GENERAL,**

      Plaintiff,

v.

                                    Civil Action No. 2:25-cv-750
                                    Judge Irene C. Berger

**3M COMPANY** f/k/a
**MINNESOTA MINING AND MANUFACTURING CO.**,

      Defendant.

## THE STATE'S MOTION TO SET ASIDE, ALTER, OR AMEND THE JUDGMENT ORDER

Respectfully submitted,

**STATE OF WEST VIRGINIA,** *ex rel***.**
John B. McCuskey, Attorney General**,**

By Counsel,

/s/ *Robert M. Bastress III*
Jace H. Goins, Chief Deputy Att'y Gen.
Vaughn T. Sizemore, Esq., Deputy Att'y. Gen.,
**OFFICE OF THE ATTORNEY GENERAL**
Building 1, Room 26-E
Capitol Complex
Charleston, West Virginia 25305
Telephone: 304-558-2021
Facsimile: 304-558-0140

Joshua I. Barrett
J. Timothy DiPiero
Lonnie C. Simmons
Robert M. Bastress III
**DiPIERO SIMMONS**
**McGINLEY BASTRESS, PLLC**
604 Virginia St., E.
Charleston, West Virginia 25301
Telephone: 304-342-0133
Facsimile: 304-342-4605
*Counsel for The State*

Now comes the State, by counsel, and pursuant to *Rule 59(e)* of the *Federal Rules of Civil Procedure*,[1] takes the unusual step of moving and otherwise requesting the Court to set aside, alter, and/or otherwise amend the judgment order, entered April 21, 2026, based upon the following grounds contained herein. The State does not do so lightly and recognizes the limited application of such a Motion. However, given recent developments at the U.S. Supreme Court along with the 20-page briefing limitation in the local rules and the lack of oral argument (though requested by 3M) in this complex case coupled with 3M's inaccurate characterizations, the State believes this clarifying brief is appropriate and respectfully requests the Court's prior Orders dismissing the case on April 21, 2026 on preemption grounds be vacated.

## I.     CONFLICT PREEMPTION

### A.     KEY DEVELOPMENTS SINCE THIS COURT'S APRIL 21ST ORDER

#### 1.     *Hencely*

On April 22, 2026, just one day after the Court entered its Memorandum Opinion and Order in this matter, Justice Thomas, writing for a 6-3 majority of the U.S. Supreme Court, reversed the Fourth Circuit's finding of preemption of a state-law tort claim in a war zone abroad. *Hencely v. Fluor Corp.*, 2026 U.S. LEXIS 1868, *22 (U.S. S.Ct. Apr. 22, 2026). The U.S. Supreme Court held that the federal statute in question – the combatant-activities exception in the Federal Tort Claims Act – did not support the Fourth Circuit's assertion of preemption of the individual estate's state-law claims. *Id.* at ** 6, 9, 11 & 18.

---

[1]*See, e.g., Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (explaining under Rule 59(e), "there are three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; . . . or (3) to correct a clear error of law or prevent manifest injustice."); *see also Banister v. Davis*, 590 U.S. 504, 507-08 (2020).

The *Hencely* Court noted that when a "Government asks a contractor for a certain result, and the contractor is sued for how it achieved that result, the suit is not preempted if the Government was silent about the conduct that allegedly violated state law[.]" *Id.* at \*\*14-15 (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 509 (1988).

In *Hencely*, Justice Thomas also reiterated the basic point that, "'Congress knows full well how to make its intention to preclude private liability known.'" *Hencely*, 2026 U.S. LEXIS 1868, \*16. (internal citation omitted).

Further, *Hencely* found that the Fourth Circuit's test that state "'tort law that conflicts with the federal policy of eliminating' state regulation of the military during wartime" was a "test that **sweeps too broadly**." *Id.* at \*\*17-18 (emphasis added); *Compare with* 4-21-26 Mem. Op. & Order at 31-32 (dismissing the State's WVCCPA claims on obstacle preemption grounds because they "would interfere with that [federal] regulatory scheme"). *Hencely's* restriction on the broad sweep of preemption asserted by the Fourth Circuit compels a different result in this case.

### 2.    *Monsanto*

In addition to *Hencely*, the Supreme Court heard oral argument in the case styled, *Monsanto Co. v. Durnell*, on April 27, 2026, (just 6 days after the Memorandum Opinion and Order in this case), which indicates that the Court may provide further guidance on some of the larger preemption issues the Court grappled with in this matter. *See, e.g.*, 4-27-26 Oral Argument Transcript at 72, *available at*: https://www.supremecourt.gov/oral_arguments/audio/2025/24-1068. A decision in *Monsanto Co. v. Durnell* is expected this summer.

2

The State respectfully requests the Court consider the new, post-Memorandum Opinion and Order decisions in *Hencely* and *Monsanto*, along with the additional information below and set aside its orders of April 21, 2026.

## B.    IMPOSSIBILITY & OBSTACLE PREEMPTION

The Court correctly identified the two types of conflict preemption as "impossibility" and "obstacle." (4-21-26 Mem Op. & Order at 24).  The analysis of the two blurs at times.

"We begin with the axiom that, under our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause." *Taffin v. Levitt*, 493 U.S. 455, 458 (1990).  The Court correctly noted the presumption against preemption "'applies with particular force" where, as here, "the state is exercising its police power.'" (4-21-26 Mem Op. & Order at 24)(internal citation omitted). The Court properly stated that the presumption against preemption can be overcome "if Congress had indicated a 'clear and manifest' intention for state law to be preempted." (*Id.*)(internal citations omitted). The Court noted that the federal "regulatory scheme is encompassed under two federal statutes: the Occupational Safety and Health Act of 1970 ('OSH Act') and the Federal Mine Safety and Health Act of 1977 ('Mine Act')." (*Id.* at 29).

### 1.    The Mine Act[2]

In the State's Exhibit 1302, attached to the State's Response to the Motion to Dismiss, OSHA wrote in 2010:

> The Mine Act contains an even more comprehensive savings clause.  Section 506 of that statute, 30 USC 955, provides that state laws or regulations imposing more stringent requirements than those imposed by the Act are not construed or held to be

---

[2]*See* 4-21-26 Mem. Op. & Order at 30.

in conflict with the Mine Act.  Accordingly, the Mine Act does not preempt actions against mine equipment manufacturers for allegedly inadequate warnings about the limitations of MSHA-approved mine equipment.  See Davis v. Eagle Coal and Dock Co., 220 W.Va. 18, 640 S.E.2d 81 (W.Va. 2006), cert denied sub nom J.H. Fletcher & Co. v. Davis, 551 U.S. 1113 (2007) (allowing a miners suit alleging inadequate warning on a dust collection device).

(Ex. 1302 at p. 2).

In sub-section (b) of the aforementioned 30 U.S.C. § 955, it states:

(b) *The provisions of any State law* or regulation in effect upon the operative date of this chapter, or which may become effective thereafter, <u>which provide for more stringent health and safety standards applicable to coal or other mines</u> than do the provisions of this chapter or any order issued or any mandatory health or safety standard **shall not thereby be construed or held to be in conflict** with this chapter. *The provisions of any State law* or regulation in effect on December 30, 1969, or which may become effective thereafter, which provide for health and safety standards applicable to coal or other mines <u>for which no provision is contained in this chapter</u> or in any order issued or any mandatory health or safety standard, **shall not be held to be in conflict** with this chapter.

30 U.S.C. § 955(b) (emphasis added).

As discussed below, the State's WVCCPA claims for unfair or deceptive acts or practices (UDAP's) are not "occupational health and safety standards."  (*See generally Compl.*; *see infra* at pp. 7-9; *see also* 4-21-26 Mem. Op. & Order at 34 (acknowledging the WVCCPA "is not a worker health and safety statute").  Rather, the UDAP claims are brought against 3M for its misrepresentations and material omissions in connection with the sale and advertisement of the 8210. (*See id.*).  But to the extent the State's WVCCPA claims are being preempted because 3M has mis-characterized and advocated for them (contrary to the motion-to-dismiss standard)[3] to be considered as being read to provide (solely) for "more stringent health and safety standards applicable to coal" mining, the Mine Act does not preempt them.  30 U.S.C. § 955(b); *see also* Trial Ex. 1302 at p. 2

---

[3]*See* 4-21-26 Mem. Op. & Order at 22.

(citing *Davis v. Eagle Coal and Dock Co.*, 220 W.Va. 18, 640 S.E.2d 81 (W.Va. 2006), cert. denied sub nom *J.H. Fletcher & Co. v. Davis*, 551 U.S. 1113 (2007)).

### 2.    The OSH Act (the 2010 OSHA Letter, *Solus* & *Gade*)

3M's Reply ignored the State Response's highlighting of the conclusion in the 2010 OSHA Letter, (Resp. at 3, citing Ex. 1302), that "there is no conflict between the OSHA/NIOSH regulatory system" and state suits "alleging that respirator manufacturers should provide additional safeguards."

The other court to consider the preemptive effect of the OSH Act in the consumer protection context was the California Supreme Court. *Solus Industrial Innovations, LLC v. Superior Court*, 4 Cal.5th 316, 346 (Cal. 2018).   There, the California Supreme Court concluded: "Under the circumstances, there is no 'clear and manifest evidence' . . . of a congressional intent to displace state authority over unfair competition and consumer claims that are premised on Cal/OSHA standards." *Id.* (internal citation omitted).  That is, after an extensive discussion of *Gade*, the California Supreme Court analyzed the issue under the heading of obstacle preemption (as well as field preemption) and found the state law consumer claims were not preempted by the OSH Act. *See id.*

"The principal goal of the federal OSH Act's enactment was to 'address the problem of uneven and inadequate state protection of employee health and safety' by supplying a minimum level of protection throughout the country—a federal 'nationwide "floor" of minimally necessary safeguards.'" *Solus Industrial*, 4 Cal.5th at 344-45 (internal citation omitted).  The *Solus* Court noted: "Even if we view UCL [unfair competition law] and FAL [fair advertising law] actions based on Cal/OSHA violations as having a substantial impact on occupational safety and health issues, that impact is not an obstacle to achieving the congressional purpose, nor are additional enforcement mechanisms an obstacle to establishing at least a minimum level of work protection." *Id.*

5

*Gade* considered the preemption of Illinois state, mini-OSHA type statutes primarily regarding the training of employees handling hazardous waste that the Court found were "occupational safety and health standards." *Gade v. National Solid Waste Management Ass'n*, 505 U.S. 88, 91-94, 107 (1992). *Gade* was not faced with whether Illinois's consumer protection statute should be preempted by the OSH Act. *See id.*

The *Gade* plurality opinion explained that the OSH Act preempts state law "that establishes an *occupational health and safety standard* on an issue for which OSHA has already promulgated a standard, unless the State has obtained the Secretary's approval for its own plan." 505 U.S. at 97 (emphasis added); *accord id.* at 98-99, 102. The WVCCPA claims are not "occupational health and safety standards." *See id.* Nor do they displace an OSHA regulation or standard. *See id.* Each of these fatal flaws to 3M's preemption defense are addressed and described more fully below.

Prior to the statements about what state-law claims are preempted by the OSH Act, the *Gade* plurality opinion explained:

> Federal regulation of the workplace was not intended to be all encompassing, however. First, Congress expressly saved two areas from federal preemption. Section 4(b)(4) of the OSH Act states that the Act does not 'supersede or in any manner affect any workmen's compensation law or . . . enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.' 29 U.S.C. § 653(b)(4). Section 18(a) provides that the Act does not 'prevent any State  agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect.' 29 U.S.C. § 667(a).
>
> Congress not only reserved certain areas to state regulation, but it also, in § 18(b) of the Act, gave the States the option of pre-empting federal regulation entirely.[4]

---

[4]That is, States can assume responsibility for occupational safety and health standards it prefers after submitting a mini, State-specific OSH plan and having it approved by OSHA. *See* 29 USC § 667(b).

505 U.S. at 96-97.

Under the analysis in *Gade* and the plain language of the OSH Act, the State's WVCCPA claims are not preempted for, at least, the following reasons.

*First*, there is the threshold question of whether the WVCCPA is an "occupational safety and health standard." *See id.* at 105 (citing 29 USC §§ 652(8), 667(b)). It is not. While *Gade* noted a Congressional goal to not just protect workers but also to avoid duplicative regulation with regard to occupational safety and health, the OSH Act plainly should not be read to toss out all 50 States's consumer law bans on unfair and deceptive acts or practices for any products that may be used on the job. This would be a wholesale sea-change in, and an evisceration of, consumer protection law.

The OSH Act allows States to develop their own State OSH Act plan to replace the federal equivalent, but to do so, the State has to get permission. 29 USC § 667(b). The State knows of no State that has ever sought permission from OSHA to have its respective consumer protection statute banning unfair or deceptive acts or practices in trade or commerce be approved under 29 USC § 667(b). This would be a most unusual request to have OSHA approve the State Attorney General's use of the WVCCPA and illustrates the distinction between State's UDAP statute and the occupational safety and health regime in the OSH Act, demonstrating that the WVCCPA is <u>not</u> an "occupational safety and health standard."

3M's reliance on *Gade* did not address *Gade's* admonition that "*state laws of general applicability* (such as laws regarding traffic safety or fire safety) that do not conflict with OSHA standards and that regulate the conduct of workers and nonworkers alike *would generally not be pre-empted*. Although some laws of general applicability may have a 'direct and substantial' effect

7

on worker safety, <u>they cannot fairly be characterized as 'occupational' standards[.]</u>" *Gade*, 505 U.S. at 107-08 (emphasis added).  So, too, here.

Further, in the context of assessing a dual purpose statute that addresses public safety and occupational safety concerns to ultimately determine whether a state law is an "occupational safety and health standard," *Gade* found it appropriate to look to both the "purpose of the state law in question" and "the state law's actual effect." 505 U.S. at 105.  The *purpose* of the WVCCPA is not designed to promote occupational safety and health.  Rather, the WVCCPA's purpose is to protect consumers and promote sound and fair business practices in the sale of goods and services and the provision of credit.  *See, e.g., State ex rel. Morrisey v. Copper Beech*, 239 W.Va. 741 (2017); *see also W.Va. Code* § 46A-1-101, *et seq*. The *effect* of the WVCCPA to stop defendants like 3M from continuing to make misrepresentations or material omissions and to otherwise not commit unfair or deceptive acts or practices in connection with the sale and advertisement of products like the 8210 does not transform it into an "occupational safety and health standard."  *Gade*, 505 U.S. at 107.

The WVCCPA is plainly not an "occupational safety and health standard" subjecting it to preemption under the OSH Act,[5] and the inquiry can end there.

*Second*, assuming *arguendo* that the State's UDAP claims in the WVCCPA are "occupational health and safety standards," they are certainly not preempted under the savings statute in 29 USC § 667(a).  The sub-section provides:

> (a)   **Assertion of State standards in absence of applicable Federal standards.**
> Nothing in this Act shall prevent any State agency or court from asserting jurisdiction

---

[5] *See also Pennsylvania v. Navient Corp.*, 967 F.3d 273, 293-294 (3rd Cir. 2020)(finding there was no conflict preemption of state-law consumer case brought by State AG because "[a]llegations of affirmative misrepresentations and misconduct stand in stark contrast" and state law and federal law could exist in harmony)

under State law over any occupational safety or health issue with respect to which no standard is in effect under section 6 [29 USC § 655].

29 USC § 667(a)(bold in original).[6]  Not surprisingly, the federal OSH Act does not contain an equivalent ban on UDAP's in the context of the sale and advertising of goods as found in the WVCCPA. "There is no possibility of conflict where there is no federal regulation." *Gade*, 505 U.S. at 100.  To  the extent there may be other bans on UDAP's elsewhere in federal law, the OSH Act did not mandate that States must use federal law to adjudicate UDAP claims.  It did the opposite, as it specifically confined the presence of similar federal standards to 29 USC § 655. The savings clause in 29 USC § 667(a), highlighted in *Gage*, saves the State's WVCCPA UDAP claims from preemption in this matter. This, too, should end the inquiry.

*Third*, while the WVCCPA claims should not be preempted based upon the foregoing, again for argument's sake, if 3M's theory is correct, then the WVCCPA claims are also saved from any preemption by 29 U.S.C. § 653(b)(4), highlighted by *Gage*.

The Court distinguished *McFadden's* finding of no preemption of the individual's respirator claim under the OSH Act because of the broad "OSH Act's savings clause" in 29 USC § 653(b)(4), (*see* Mem. Op. & Order at 33), but if the State's WVCCPA claims are as 3M appears to be reading them – to interfere with the "significant federal objectives" of "worker safety and health,"[7] – then the WVCCPA claims would fit within the last portion of the following broad language in the "savings clause": Nothing in this chapter shall be construed to . . . diminish or affect in any other

---

[6]*But see* 4-21-26 Mem. Op. & Order at 33.

[7]*See* 4-21-26 Mem. Op. & Order at 33-34.

9

manner the . . . statutory rights . . . of employers[8] . . . under *any* law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." On the other hand, if the WVCCPA is not an attempt to interfere with the federal objectives relating to worker safety and health (*i.e.*, "with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment"), as the State maintains, then the WVCCPA is plainly not a "occupational safety and health standard" that could be pre-empted by the OSH Act, as explained in the first point.[9] Either way, the WVCCPA claims are not preempted.

### 3.    *Mensing* & the insufficiency of "the possibility of impossibility"

The post-*Mensing* cases make clear that 3M's assertions regarding the interpretation of *Mensing* was plainly incorrect.[10] That it was theoretically possible that NIOSH could have (likely for the first time) rejected 3M's attempts to change what it put on the 8210 or the 8210 box is insufficient for 3M to establish impossibility preemption. Courts have long dubbed this the "possibility of impossibility" argument insufficient to support preemption. *See, e.g.*, *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 313-314 (2019).

Even before *Albrecht*, in *Mullens v. Ethicon*, 147 F.Supp.3d 478, 480-85 (S.D. W.Va. 2015), Judge Goodwin rejected this faulty *Mensing*-based argument that 3M made in this matter that claims

---

[8]The State and the Attorney General are employers.

[9]By contrast, the Illinois state-law claims in *Gade* were preempted because they were outside of the savings clause by virtue of the OSHA equivalent regulations on the training of hazardous waste workers, and the Illinois state-law claim at issue was an occupational safety and health law. In this instance, 3M cannot thread the same preemption needle as the Illinois mini-OSHA law present in *Gade*.

[10]*But see* 4-21-26 Mem. Op. & Order at 26.

were preempted because the defendant had to ask the agency for approval.[11]  *Mensing* was not so broad.  *Mullens*, 147 F.Supp.3d at 484-85.  Indeed, all claims of federally-regulated products would be pre-empted under such an expansive reading.  As Judge Goodwin put it: "This spin on impossibility preemption would destroy state tort liability for any product subject to even the least rigorous federal regulatory scheme.  As discussed below, Congress, the Supreme Court, and common sense counsel against such a result." 147 F.Supp.3d at 481.

Instead, "[t]he impossibility [triggering preemption] in *Mensing* arose from the unique 'duty of sameness' imposed on generic drugs, which has no corollary in the medical device context." *Id.* at 484 (citing *Mensing*, 131 S.Ct. at 2576, 2578).  The "nature of the impossibility found in *Mensing*" was the "direct conflict between the 'state-law duty to change the label and the [] federal law duty to keep the label the same."  *Id.* at 484-85.  Judge Goodwin noted the "completely different" situation in *Mullins* where "[u]nlike the law imposing the duty of sameness for generics, there is no federal law prohibiting design changes to medical devices" at issue in *Mullins*.  The manufacturers in *Mullins* were required to submit a form notice to the FDA for clearance, but Judge Goodwin found that did "not directly conflict with the state law requirement that a product be reasonably safe."  *Id.* at 485.

"The underlying question for this type of impossibility pre-emption defense is whether federal law (including appropriate FDA actions) prohibited the drug manufacturer from adding any and all warnings to the drug label that would satisfy state law." *Albrecht*, 587 U.S. at 313-314.  "In a case like *Wyeth*, showing that federal law prohibited the drug manufacturer from adding a warning that would satisfy state law requires the drug manufacturer to show that it fully informed the FDA

---

[11]*See* Resp. to MTD at 14, n. 13.

of the justifications for the warning required by state law and that the FDA, in turn, informed the drug manufacturer that the FDA would not approve changing the drug's label to include that warning." *Id.* at 314.  3M cannot point to anything close to that in this case.

The Sixth Circuit Court of Appeals also analyzed *Wyeth* and *Mensing* in *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 584 (6th Cir. 2013).  *Fulgenzi* found: "It is true that the FDA had the authority to reject PLIVA's labeling change after the fact. But this is precisely the 'possibility of impossibility' that *Wyeth* found insufficient to warrant preemption." *Id.*  As the Supreme Court "cautioned many times before, the 'possibility of impossibility [is] not enough." *Albrecht*, 587 U.S. at 314 (2019)(citing *Mensing*, 564 U.S. 604, 625, n. 8); *see also Wyeth*, 555 U.S. at 573. In *Fulgenzi*, the Sixth Circuit rejected the defendant's preemption argument on this basis.[12]

Here, that "possibility of impossibility" argument is 3M's sole (yet improper and flawed) basis for impossibility preemption, (*see* 4-21-26 Mem. Op. & Order at 26), and this Court should reject it as the U.S. Supreme Court did in *Albrecht* and *Wyeth* and as other lower courts have.

> **4.     The State's WVCCPA claims are <u>not</u> for "labeling" or "occupational safety and health," and they exist entirely outside of the federal statutes and regulations 3M put forward in its improper characterization of the State's claims in the pending Motion to Dismiss.**

_____

[12]Like *Albrecht*, *Wyeth*, *Fulgenzi*, and Judge Goodwin in *Mullens*, other district courts have likewise similarly held that the mere possibility that the agency could reject routine changes in the approval process that a manufacturer should have made (*i.e.*, the so-called "possibility of impossibility") did not rise to the same impossibility with the unique "duty of sameness" the defendant faced in *Mensing* requiring preemption.  *See, e.g., Gaetano v. Gilead Scis.*, Inc., 529 F.Supp.3d 333, 340-43 (D. N.J. Mar. 26, 2021)(finding the defendant's preemption arguments that the FDA had to review and approve and could reject any changes of a label by the manufacturer was governed by *Wyeth* (and thus not preempted) rather than by *Mensing* because "[t]hat possibility of rejection is not sufficient to require preemption."); *Holley v. Gilead Sciences, Inc.*, 379 F.Supp.3d 809, 814 (N.D. Cal. 2019); *Guidry v. Janssen Pharms, Inc.*, 206 F.Supp.3d 1187, 1208 (E.D. La. 2016).

The WVCCPA is a remedial statute designed to protect consumers by requiring sellers of products to be truthful and otherwise not misrepresent or omit material facts about their products. The 72-page Complaint and corresponding Exhibits showed 3M's misrepresentations on its website and in various flyers. While these misrepresentations and omissions continued on the 8210 box and on the 8210 mask itself, 3M's widespread deceit was part of a larger effort to mislead the consuming public in West Virginia by committing unfair or deceptive acts or practices.

While federal officer removal context requires the Court to consider the defense version of the plaintiff's claim, the motion-to-dismiss standard requires, by contrast, that Plaintiff be entitled to inferences and its allegations be treated as true, as the Court noted. (*See* Mem. Op. & Order at 22).

However, the State's 72-page Complaint was largely reduced to 3M's characterization as a "labeling claim." The State's case is not a labeling claim no matter how many times 3M misconstrues it as such. 3M mis-framed the State's complaint based upon what 3M itself did in the asbestos example in the 1980's, but this WVCCPA case is not so limited.

The Complaint has multiple aspects that are stand-alone bases for civil penalties. The State's exercise of its traditional police power through enforcement of the WVCCPA's ban on unfair a deceptive acts or practices does not depend on a violation of federal law and exists outside of any approval by NIOSH of its emblem or number that must be on the mask. On page 11 of the State's Response, the State reiterated 11 of the potential bases for liability under the WVCCPA with bullet points also set forth in the Complaint regarding misrepresentations and omissions relating to the 8210's protection, durability, collapse resistance, use in coal mining,[13] and the ability to be properly

---

[13]Despite 3M telling this Court that the 8210 is the "gold standard" for respirators, the 8210 is not suitable for coal mining. For instance, the recent 2025 Silica Dust Rule makes the 8210 unable to be used in coal mining, but its application has been halted by a court order.

and consistently fitted, *etc.* (Resp. to MTD at 11-12, citing, *inter alia, Compl.* ¶ 172).  Each of these claims are independent bases for a violation of the WVCCPA, and none of these aspects and bases for relief are dependent upon the NIOSH labeling requirements.

In examining a WVCCPA Count pleaded by an individual, this Court previously recognized that some aspects may be preempted and others may not and thus denied a Motion to Dismiss. *Snuffer v. Great Lakes Educ. Loan Servs.*, 97 F.Supp.3d 827, 832 (S.D. W.Va. 2015)(Berger, J). In *Snuffer*, this Court found "[t]hough portions of the WVCCPA conflict with [Education Department] ED regulations are preempted" . . . "Plaintiff has pled violations of the WVCCPA that are not in conflict with any ED regulation or guidance identified by the Defendant."  *Id.*

### 5. NIOSH's Role

> **a.  The Court's Opinion relied on 3M's assertion that NIOSH "'dictated the content of the warnings,'" but the 2010 OSHA letter plainly disputes this factual assertion by stating that 3M could "provide supplemental label information without federal approval."**

On page 14 of the Memorandum Opinion and Order, the Court wrote: "Although the federal mandate did not explicitly require 3M to 'market and describe' its 8210 respirator 'in a certain way', by requiring NIOSH-approved respirators, the federal government, at the very least, 'dictated the content of warnings' on 3M's respirators.  *Anne Arundel Cnty.*, 94 F.4th at 349-50." (4-21-26 Mem. Op. & Order at 14).  As the State recited in its Response, OSHA's 2010 letter states: "the ability of a respirator manufacturer to provide supplemental label information <u>without</u> federal approval weighs heavily against finding that the federal scheme is intended to be preemptive."  (Resp. to MTD at 3-4, 10; *see also* Ex. 1302 at p. 3).  If nothing else, this is a reason for the case not to be disposed of on a motion to dismiss and for discovery to occur on this apparently disputed factual issue.

14

**b.      NIOSH's regulatory role differs from the FDA's in the cases upon which 3M relies.**

There is a profound difference between FDA regulation of drugs and NIOSH's previous practice of largely rubber stamping the respirator manufacturer's submissions in the approval process.  (*See, e.g.*, Compl. at p. 12, ¶¶ 22-23 (highlighting that the NIOSH approval system "fundamentally flawed and was a marketing device, not a true measure of safety."); *see also, e.g., Wyeth v. Levine*, 555 U.S. 555, 561-62 (2009) (recognizing active role of FDA).  NIOSH does not tell 3M what to put on the respirator or box.  *See* Trial Ex. 1302.  One reason NIOSH does not tell 3M what to put on the box or website because NIOSH does not have the same information about the goods being sold as the FDA does.  The cases 3M relied on for its preemption defense were based primarily on cases involving the FDA, and none of them implicated NIOSH's prior regulation (or lack thereof) of respirators. As the Court correctly observed, this case is premised upon the problems with regard to the fit of the 8210, and NIOSH never even assesses the fit of the 8210 in its process.

**c.      3M could and can comply with both the NIOSH process, and the WVCCPA's ban on unfair or deceptive acts or practices and to otherwise be truthful about the 8210.**

In short, 3M could have complied with both the NIOSH rubber-stamping of the materials it submitted pursuant to 42 CFR § 84 and the WVCCPA's ban on misrepresentations and omissions of material fact and other unfair or deceptive acts or practices.  (*See* Resp. to MTD at 12-13).  3M has not asserted that NIOSH is requiring it to misrepresent facts or materially omit information or otherwise commit unfair or deceptive acts or practices, which violates the WVCCPA.  (*See id.*).

### 6.    Obstacle preemption is rarely invoked, and *Hencely* rejected the broad sweep 3M urged here.[14]

In *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 662 (4th Cir. 2024), the Fourth Circuit noted the obstacle preemption argument there faced an "uphill climb." *See also, e.g., Source Cap. Funding Inc. v. Barrett Fin. Grp., LLC*, 2023 U.S. Dist. LEXIS 203363, \*29 (D. Ariz. Nov. 14, 2023) (citing *In re Volkswagen*, 959 F.3d at 1212-13 (9th Cir. 2020))(explaining "courts find obstacle preemption only rarely, and it is especially unlikely in an area that is within a state's traditional police powers")

Other Judges in the Southern District have likewise rejected the "broad sweep" of obstacle preemption that Justice Thomas warned about in *Hencely*, a day after the Memorandum Opinion & Order in this case.  *See supra* at pp. 1-2. In refusing to invoke obstacle preemption and dismiss a WVCCPA claim even where he thought it might make for "good policy," Judge Faber wrote:

> To a certain extent, the obstacle preemption analysis requires the court to exercise policy judgment at the margins, where there is a specific federal interest and a sharp conflict that the court can presume Congress would disdain. Here, however, while disallowing plaintiff's claims might make for good policy, it would make for bad law to do so on obstacle preemption grounds. The court would essentially have to rewrite the preemptive scope of the HEA.

*Oakley v. Coast Prof'l, Inc.*, 570 F. Supp. 3d 365, 380 (S.D. W.Va. 2021).

In reaching his decision, Judge Faber relied on Judge Goodwin's prior work and noted:

> . . . In the area of obstacle preemption, **citing overarching goals of federal law and saying that state law hinders them is generally insufficient**. Judge Goodwin's opinion in *Smith v. BAC Home Loans Servicing* is instructive here. 769 F. Supp. 2d 1033 (S.D.W. Va. 2011).  In *Smith*, a bank argued that federal banking law preempted a consumer's claims under the WVCCPA (relating to the foreclosure of her home). *Id.* at 1037. The bank's position was that because the claims "directly implicated" how the bank serviced the loans, they were preempted. *See id.* at 1045.

---

[14]The same analysis of the OSH Act and *Gade*, described above in the preceding section, likewise compel the conclusion that obstacle preemption does not preempt the WVCCPA claims.

In rejecting the bank's argument, Judge Goodwin explained that "[o]bstacle preemption is not triggered merely because West Virginia's broad statute prohibiting unlawful forms of debt collection happens to ensnare certain practices of national banks." *Id.* at 1046. . . .

*Oakley*, 570 F. Supp. 3d at 379-380 (emphasis added).[15]

The Court concluded that the WVCCPA claim "essentially would undermine such approval" and "would interfere with the methods utilized under the NIOSH and MSHA regulatory scheme." (4-21-26 Mem. Op. & Order at 32). This "broad" preemption "sweep" urged by 3M, however, is contrary to Justice Thomas's admonition in *Hencely*, decided the day after the decision in this case. Given this new U.S. Supreme Court precedent, the Court should vacate the order. Without the application of *Hencely*, State Attorney General enforcement actions and assertion of its traditional police powers against companies that commit unfair or deceptive acts and practices are going to be few and far between, as virtually all of them involve situations where a product is federally regulated or approved in some respect.

## II.    <u>JURISDICTION: THE LACKING NEXUS ELEMENT</u>

---

[15]Likewise, in the context of federal conflict preemption, Judge Chambers found that "[a]s the Court found States may ban uranium mining despite a federal scheme of uranium mining regulation, or horsemeat in the face of a federal scheme of horse slaughter regulation, so this Court is compelled to find that federal regulation of medication abortion prescription does not conflict with severe state limitations on abortion." *Genbiopro, Inc. v. Sorsaia*, 2023 U.S. Dist. LEXIS 149195, *29 (S.D. W.Va. Aug. 24, 2023)(citing *Virginia Uranium, Inc. v. Warren*, 139 S.Ct. 1894, 1901, 1903, 1907-08 (2019); *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 467 (2012)), aff'd by *GenBioPro, Inc. v. Raynes*, 144 F.4th 258 (4th Cir. 2025). The late Judge Copenhaver similarly rejected the assertion of obstacle preemption in a WVCCPA claim brought by a private individual in *Cline v. Bank of Am.*, N.A., 823 F.Supp.2d 387, 393-99 (S.D. W.Va. 2011). The Fourth Circuit rejected conflict preemption of state consumer law claims in *Guthrie v. PHH Mortg Corp.*, 79 F.4th 328, 337-42 (4th Cir. 2023); *accord WinRed, Inc. v. Ellison*, 581 F. Supp. 3d 1152, 1173 (8th Cir. 2022).

The State also wanted to clarify confusion sown by 3M with respect to the "nexus requirement" for there to be federal officer removal jurisdiction. The Court correctly noted that a defendant will not "'satisfy the nexus element by alleging only that the "plaintiff's entire civil action in a general sense" is related to the defendant's federal work.'" (4-21-26 Mem. Op. & Order at 12)(internal citations added). Unfortunately, 3M successfully engendered confusion by describing the potentially "*de minimis*" number of 8210's that were included in the batch of respirators 3M sold to FEMA in 2020 outside of West Virginia, (*see id.* at 13, 15), but the important number is the amount of 8210's sold while allegedly acting under 3M's federal authority in 2020 that are implicated by the Complaint's request for injunctive relief and civil penalties, and that number is unquestionably **ZERO**. Not one – that is, zero, zip, zilch, nada – of the 8210's 3M sold to FEMA in 2020, as part of the acts 3M asserts it was "acting under" federal authority, is implicated by the State's Complaint. It's not *de minimis*; it's zero.

As the Court correctly recognized, the State's claims under the WVCCPA seek injunctive relief against and civil penalties from 3M.

Injunctive relief is prospective, not retroactive. *See, e.g.*, *Santiago v. Corp. Renovacion Urbana y Vivienda*, 554 F.2d 1210, 1212 (1st Cir. 1977), citing *Edelman v. Jordan*, 415 U.S. 651, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974), reh'g denied, 416 U.S. 1000, 40 L. Ed. 2d 777, 94 S. Ct. 2414; *Roig v. Puerto Rico Nat'l Guard,* 47 F. Supp. 2d 216, 222 (D. P.R. 1999). The Complaint's request recognizes this fact. *See generally* Compl. Pr. for Rel. B. Obviously, the State cannot and does not seek to enjoin 3M's sales it already made to FEMA outside of West Virginia in 2020.

With regard to civil penalties, none of the 8210's 3M sold to FEMA in 2020 can be the basis for a civil penalty in this case for, at least, two reasons: (1) they were sold outside of West Virginia

18

and (2) they were sold outside of 3M's relevant period of time. 3M's "sitting on the shelf" argument means only that 3M has plausibly alleged there are 8210's that 3M sold in 2020 that may now be on a shelf somewhere in West Virginia, but again, those 8210 masks on the shelf cannot be the basis for either injunctive relief against or civil penalties from 3M in this case. 3M has never explained how and it is not asserting that an 8210 sitting on a shelf outside of 3M's control after 3M sold it more than one year before 3M's cutoff date in 2021 can be the basis for a violation of the WVCCPA pursued against 3M. That is, the State cannot sue 3M for a 8210 sitting on a shelf after 3M has already sold it. 3M has never contended that it is subject to civil penalties for its products sitting on a shelf or for the distributor's secondary sale to the end purchaser. Indeed, this position would be contrary to 3M's assertions made in the pending 8710 case in Lincoln County.[16] If this "sitting on the shelf" is truly part of 3M's theory of the case, 3M should have to explain how it is subject to liability under the WVCCPA for its respirator(s) sitting on a shelf and otherwise potentially being re-sold for years after it was originally sold by 3M outside of West Virginia in 2020.[17]

Footnote 9 of the Memorandum Opinion begins: "[w]hether 3M would be subject to civil penalties for the 8210 respirators it supplied to FEMA will largely depend on whether those respirators could be distinguished from those sold by 3M to distributors in West Virginia[.]" (4-21-26 Mem. Op. & Order at 18, n. 9). Contrary to 3M's suggestion, however, the 8210's sold before

---

[16]Two days after the Court's Orders, 3M sought a status conference in Lincoln County. 3M improperly seeks to use this case to try a collateral attack and to undo and otherwise overthrow the proceedings in the pending 23 year-old case in Lincoln County, the trial of which began in January 2025, though 3M did not itself even raise conflict preemption originally at the time the 50 or so pre-trial motions were originally filed and argued in Lincoln County in 2022.

[17]The State's assertion that it cannot sue 3M for sale of the 8210 outside of West Virginia or outside of 3M's asserted 4-year statutory period or for sitting on a shelf is not a "disclaimer," but rather, 3M's theory of the case, which is the lens with which to view federal officer removal.

19

December 2021 to FEMA outside of West Virginia can easily be separated from the 8210's sold after December 2021 into West Virginia.

While there was some suggestion that 3M's "advertising" fits it into the post-December 22, 2021 time period 3M asserts is at play, the post-December 2021 advertising by 3M would have nothing to do with 3M's sales of its masks to FEMA in 2020, which is the asserted federal authority 3M claims to be acting under to invoke federal jurisdiction. Thus, there is no nexus.

Based upon the foregoing and having cleared up the confusion created by 3M's mis-characterization that there were a *de minimis* number of 8210's 3M sold to FEMA into West Virginia after December 2021 when, in fact, there were zero, 3M cannot meet the nexus element.[18] The Court does not have jurisdiction as 3M must establish this element. Accordingly, the Court should vacate the prior orders and remand the entire matter back to the Circuit Court of Kanawha County.

WHEREFORE, the State requests the Court vacate the Judgment Order, entered April 21, 2026, for the reasons expressed, and, if necessary, after conducting oral argument on this matter.

---

[18]Since the filing of the briefs in this matter, Justice Thomas, writing for the U.S. Supreme Court on April 17, 2026, found in *Chevron USA Inc. v. Plaquemines Parish*, 146 S.Ct. 1052 (2026), that "Chevron has plausibly alleged a close relationship between its challenged conduct and the performance of its federal duties," but acknowledged a concern about the "butterfly effect" in construing the nexus element. *Id.* at ** 15-16, n. 4. Assertion of jurisdiction in this case demonstrates the type of broad, unrestrained assertion of a "nexus" that Justice Thomas and other members of the Court were concerned about in *Chevron*. *See id.* If allegations of potentially minimal subsequent downstream commerce is enough of a "nexus" as 3M asserts here, then there is no limit to federal officer removal jurisdiction. But the Supreme Court has repeatedly noted that such federal officer removal jurisdiction is, in fact, "not limitless." *See* CM/ECF Doc. # 15 at 7-8 (internal citations omitted).

**UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**STATE OF WEST VIRGINIA,**
*ex rel.* **JOHN B. McCUSKEY,**
**ATTORNEY GENERAL,**

        Plaintiff,

v.                                                                       Civil Action No. 2:25-cv-750
                                                                          Judge Irene C. Berger

**3M COMPANY** f/k/a
**MINNESOTA MINING AND MANUFACTURING CO.**,

        Defendant.

## <u>CERTIFICATE OF SERVICE</u>

    I, Robert M. Bastress III, counsel for the State/Plaintiff, do hereby certify that a copy of

**"THE STATE'S MOTION TO SET ASIDE, ALTER, OR AMEND THE JUDGMENT**

**ORDER"** was served upon all counsel for 3M via the CM/ECF system on this, the 19th day of May,

2026.

                               /s/ *Robert M. Bastress III*
                               Robert M. Bastress III (WV Bar #9616)