**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

|  |  |
|---|---|
| STATE OF WEST VIRGINIA, *ex rel*. JOHN B. McCUSKEY, Attorney General,<br><br>       Plaintiff,<br><br>   v.<br><br>3M COMPANY,<br><br>       Defendant. | Civil Action No. 2:25-cv-00750<br>Judge Irene C. Berger |

**3M'S OPPOSITION TO THE STATE'S MOTION
TO SET ASIDE, ALTER, OR AMEND THE JUDGMENT ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I.    The State Provides No Basis To Reconsider The Court's Remand Decision......................3

II.   The State's Effort To Relitigate The Court's Preemption Decision Fails. .........................5

    A.    The State's Motion Does Not Satisfy Rule 59(e). .....................................................6

        1)    The State's Invocation Of *Hencely* And *Monsanto* Does Not
        Entitle It To Rule 59(e) Relief. ......................................................................6

        2)    The State's Preemption Arguments All Could Have Been Raised
        Previously And Cannot Be Considered Under Rule 59(e). ........................7

    B.    The Court Correctly Held That The State's Claim Is Preempted. ...........................10

        1)    3M Cannot Unilaterally Comply With Both Federal Law And The
        State's Purported Warning Requirements.....................................................10

        2)    The OSH Act Preempts The State's Claim...................................................12

        3)    The Mine Act Preempts The State's Claim. ................................................15

        4)    The State's Cited Authorities Do Not Save The State's Claim. ................16

CONCLUSION....................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banister v. Davis*,
590 U.S. 504 (2020)...............................................................................................2, 5, 7

*Chevron USA Inc. v. Plaquemines Parish*,
146 S. Ct. 1052 (2026)................................................................................................1, 5

*Cline v. Bank of Am., N.A.*,
823 F. Supp. 2d 387 (S.D.W. Va. 2011)......................................................................16

*Exxon Shipping Co. v. Baker*,
554 U.S. 471 (2008)................................................................................................2, 5, 7

*Fulgenzi v. PLIVA, Inc.*,
711 F.3d 578 (6th Cir. 2013) .......................................................................................11

*Gade v. Nat'l Solid Waste Mgmt. Ass'n*,
505 U.S. 88 (1992)...................................................................................................9, 13

*Gaetano v. Gilead Scis., Inc.*,
529 F. Supp. 3d 333 (D.N.J. 2021) ..............................................................................11

*GenBioPro, Inc. v. Sorsaia*,
2023 WL 5490179 (S.D.W. Va. Aug. 24, 2023) .........................................................16

*Guthrie v. PHH Mortg. Corp.*,
79 F.4th 328 (4th Cir. 2023) ........................................................................................16

*Hanover Ins. Co. v. Corrpro Cos.*,
221 F.R.D. 458 (E.D. Va. 2004) ................................................................................2, 9

*Hencely v. Fluor Corp.*,
146 S. Ct. 1086 (2026)............................................................................................1, 6, 7

*Holland v. Big River Minerals Corp.*,
181 F.3d 597 (4th Cir. 1999) .........................................................................................6

*Holley v. Gilead Scis., Inc.*,
379 F. Supp. 3d 809 (N.D. Cal. 2019) .........................................................................11

*JTH Tax, Inc. v. Aime*,
984 F.3d 284 (4th Cir. 2021) .......................................................................................10

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)................................................................................................14

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) .........................................................................1, 3, 9

*Merck Sharp & Dohme Corp. v. Albrecht*,
    587 U.S. 299 (2019)................................................................................................11

*Monsanto Co. v. Durnell*,
    No. 24-1068 (U.S.).....................................................................................................1

*Oakley v. Coast Pro., Inc.*,
    570 F. Supp. 3d 365 (S.D.W. Va. 2021)................................................................16

*Pennsylvania v. Navient Corp.*,
    967 F.3d 273 (3d Cir. 2020)...................................................................................16

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011).......................................................................................8, 10, 12

*Snuffer v. Great Lakes Educ. Loan Servs., Inc.*,
    97 F. Supp. 3d 827 (S.D.W. Va. 2015)..................................................................16

*Solus Industrial Innovations, LLC v. Superior Court*,
    4 Cal. 5th 316 (2018) ...........................................................................................9, 13

*Taffin v. Levitt*,
    493 U.S. 455 (1990)...................................................................................................8

*Thomas v. S.C. Dep't of Mental Health*,
    2024 WL 4298146 (4th Cir. Sept. 26, 2024) ........................................................10

*Wyeth v. Levine*,
    555 U.S. 555 (2009).............................................................................................9, 11

**Statutes**

28 U.S.C. § 1442(a)(1)........................................................................................................3

29 U.S.C. § 653(b)(4) .......................................................................................................12

29 U.S.C. § 667(a) ............................................................................................................12

30 U.S.C. § 955(a) ............................................................................................................15

## Regulations

30 C.F.R. § 72.700(a)..................................................................................................................13

42 C.F.R. § 84.1(c)....................................................................................................................13

42 C.F.R. § 84.10......................................................................................................................13

42 C.F.R. § 84.33(a)..................................................................................................................10

42 C.F.R. § 84.34......................................................................................................................14

42 C.F.R. § 84.35......................................................................................................................10

42 C.F.R. § 84.70......................................................................................................................13

## Rules

Fed. R. Civ. P. 59(e) ...........................................................1, 2, 3, 4, 5, 6, 7, 9, 10, 17

**INTRODUCTION**

The Court should deny the State's motion to set aside the Court's April 21 Order. The State's Rule 59(e) motion finds no support in the federal rules or the merits, and it does not come close to clearing Rule 59(e)'s high hurdle. The State contends that its impetus for filing its motion is what the State euphemistically calls "recent developments at the Supreme Court." Dkt. 36 at 1 (Mot.). But those purported developments are so obviously off base as to ring of pretext. Neither *Hencely v. Fluor Corp.*, 146 S. Ct. 1086 (2026)—which concerns preemption of claims challenging conduct by military contractors in a war zone—nor the still un-decided ruling in *Monsanto Co. v. Durnell*, No. 24-1068 (U.S.), provides any basis for disturbing this Court's decision.

Tellingly, the State barely acknowledges the recent Supreme Court authority that is actually pertinent to this Court's Order. The State buries the Supreme Court lede in a footnote on the last page of its motion, begrudgingly mentioning the Supreme Court's April 17 decision in *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052 (2026). *Chevron* emphatically *confirms* this Court's well-reasoned and thorough Order, holding that the federal officer removal statute "sweeps broadly," requiring only "'some relation'" between "'the charged conduct and asserted official authority'"—*i.e.*, "a connection that is not 'tenuous, remote, or peripheral.'" *Id.* at 1060 & n.3, 1061. Under *Chevron*, 3M's plausible "nexus" allegations readily suffice.

Far from providing a basis to set aside the Court's Order, the State's treatment of Supreme Court authority underscores that the State's motion is wholly improper. The Fourth Circuit directs that a court may only grant extraordinary relief under Rule 59(e) for three reasons: to address an intervening change in controlling law; when there is new evidence that was not previously available; or to correct a clear error or prevent manifest injustice. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012). None of those reasons applies here, and the

1

State does not seriously argue otherwise. Rule 59(e) does not provide a party with a chance "'to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008); *see also Banister v. Davis*, 590 U.S. 504, 508 (2020). Nor is Rule 59(e) "a mechanism to just keep filing motions with new theories until [a party] gets it right." *Hanover Ins. Co. v. Corrpro Cos.*, 221 F.R.D. 458, 460 (E.D. Va. 2004). Yet that is precisely what the State seeks to do by its motion.

Because the State merely recycles old arguments and presses previously available points that it neglected to raise in months of briefing (totaling over 60 pages), the State's motion should be denied.

## BACKGROUND

West Virginia's lawsuit—originally filed in state court—concerns the 8210 respirator, a gold-standard "N95" filtering facemask respirator that meets federal standards for performance and quality. Specifically, the National Institute for Occupational Safety and Health (NIOSH) administers a rigorous set of requirements that respirators must meet to qualify as approved equipment and imposes strict labeling requirements on approved respirators. In turn, the Mine Safety and Health Administration (MSHA) has adopted NIOSH's approval scheme in its role as the federal regulator of mines and mining operations. The State has never disputed that 3M's 8210 respirator has at all times met and complied with the federal government's strict qualifications and labeling requirements and has been federally approved for use in coal mines.

West Virginia nonetheless brought a state-law consumer protection claim against 3M, alleging that the sale and distribution of all 8210 respirators in West Virginia violated the West Virginia Consumer Credit and Protection Act (WVCCPA) and should be enjoined because, among other reasons, 3M did not stamp the respirator with a warning that read "NOT FOR USE IN COAL

2

MINING/IGNORE NIOSH COAL APPROVAL." 3M removed the case to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and subsequently moved to dismiss.

The Court held that 3M properly invoked federal officer removal jurisdiction because the relief sought by the State is related to 3M's federal work supplying 8210 respirators to FEMA during the COVID-19 pandemic. Dkt. 31 at 14 (Op.). After finding jurisdiction proper, the Court granted 3M's motion to dismiss because federal law preempts West Virginia's state-law claim under each of two independent preemption doctrines: impossibility preemption and obstacle preemption. West Virginia's claim was barred by impossibility preemption because it would be "impossible for 3M to independently comply with West Virginia's claimed labeling requirements without running afoul of NIOSH requirements." Op. 27. And the Court held that "[t]o the extent other aspects of West Virginia's claim would not require 3M to seek approval from NIOSH, the claim is still preempted because it would impose requirements that pose an obstacle to the purposes and objectives of the NIOSH and MSHA regulatory scheme." *Id.* The Court accordingly dismissed West Virginia's claim with prejudice. *Id.* at 34.

## ARGUMENT

### I.    The State Provides No Basis To Reconsider The Court's Remand Decision.

The State's motion first reprises its contention that this "Court does not have jurisdiction" because "3M cannot meet the nexus element" for federal officer removal. Mot. 20. In seeking to set aside the Court's jurisdictional ruling, the State does not attempt to demonstrate that its arguments fit any of the three permissible grounds for obtaining relief under Rule 59(e). The State does not identify new evidence or any intervening change in controlling law, nor does it purport to correct any error of law or manifest injustice. *See Mayfield*, 674 F.3d at 378.

Instead, the State reiterates its argument that there is no connection between the State's lawsuit and the 8210s supplied to FEMA because they were sold "outside of West Virginia" and

3

"outside of 3M's relevant period of time" (*i.e.*, sales were made prior to the WVCCPA's four-year lookback period).  Mot. 18–19.  The Court already considered this argument.  *See* Op. 13 (quoting Dkt. 15 at 10).  The Court properly rejected it and credited 3M's allegations, reasoning that "given the shelf life of the respirators, there could be respirators in circulation in West Virginia, as a result of the government mandate, that do not contain the labeling West Virginia now claims is required." *Id.* at 14.

The State's Rule 59(e) motion contends (at 18) that "confusion sown by 3M" underlies the Court's finding that "3M plausibly alleges that West Virginia's claim is related to its federal work." Op. 15.  But the Court was not confused:  the State already made this very argument, Dkt. 26 at 11, and the Court expressly considered and rejected it.  The Court explained that the 8210 respirators sold to FEMA and distributed in West Virginia and those sold to private distributors "include the same label that omits the warning which West Virginia now claims to be a violation."  Op. 14–15.  For that reason, "it would be difficult to distinguish between the[ ] 8210 respirators" sold to FEMA and the ones the State challenges.  *Id*. at 15.  The Court reasoned that "because West Virginia seeks to enjoin 3M from advertising the 8210 respirators in West Virginia, it is unclear how an injunction could be tailored to not include the respirators supplied to FEMA and still in circulation."  *Id*.  And the State's argument—repeated in its Rule 59(e) motion (at 18)—that it could disclaim civil penalties for 8210s sold to FEMA was likewise insufficient because West Virginia's claim targets advertising on the respirators.  Op. 16.  Thus, "the acts for which West Virginia is suing 3M" related to its supplying of "NIOSH approved" 8210 respirators "to FEMA during the COVID-19 pandemic."  *Id.* at 14–16.

The Supreme Court's *Chevron* decision confirms that this Court got it exactly right. In *Chevron*, several local governments sued in state court for claims that Chevron caused

4

environmental damage. 146 S.Ct. at 1059. Chevron removed under the federal-officer removal statute, alleging that the case implicated activities undertaken pursuant to federal direction during WWII. Notably, the plaintiffs "limit[ed] the scope of th[eir] claims" in hopes of avoiding federal jurisdiction, expressly disclaiming any "claims . . . preempted by federal law." Compl. ¶ 33, *Plaquemines Parish v. Total Petrochemicals & Refining USA, Inc.*, No. 2:18-cv-05256 (E.D. La. May 23, 2018), Dkt. 1-8. But, focusing on Chevron's "plausible factual allegations," the Supreme Court held that the "case fit[] comfortably" within the federal officer removal statute. *Chevron*, 146 S. Ct. at 1061. That statute "sweeps broadly," and it "contemplates removal of suits against officers or their agents for acts that were not done under color of their offices, so long as the suits 'relat[e] to' such acts." *Id.* at 1060, 1063.

Ultimately, the State's request that this Court "vacate the prior orders and remand the entire matter back to the Circuit Court of Kanawha County," Mot. 20, is a transparent attempt to "relitigate" this Court's well-reasoned decision denying remand, *Exxon Shipping*, 554 U.S. at 485 n.5. The Court should deny the State's rehashed request for remand to state court.

## II.    The State's Effort To Relitigate The Court's Preemption Decision Fails.

The State provides no basis to reconsider the Court's ruling that federal law preempts the State's claim. The State's motion does not fall within any of the three permissible grounds for a Rule 59(e) motion. While the State does raise new arguments, it does so based on preexisting authority, and Rule 59(e) does not permit consideration of arguments that "could have been raised before the decision issued." *Banister*, 590 U.S. at 508. In all events, even if the Court were to address the State's new arguments, each is meritless, and none should upend this Court's considered judgment.

5

A.      **The State's Motion Does Not Satisfy Rule 59(e).**

1)      **The State's Invocation Of *Hencely* And *Monsanto* Does Not Entitle It To Rule 59(e) Relief.**

The State attempts to justify its invocation of Rule 59(e) by citing an irrelevant Supreme Court decision and an immaterial yet-to-be-decided Supreme Court case. That effort fails. The Supreme Court's decision in *Hencely v. Fluor Corp.*, 146 S. Ct. 1086 (2026), has no bearing here. And the State offers no support for its hope that possible future guidance from the forthcoming decision in *Monsanto Co. v. Durnell*—a case arising under the Federal Insecticide, Fungicide, and Rodenticide Act—comes within the limited scope of Rule 59(e). Mot. 2.

The Fourth Circuit has explained that "[t]he intervening law exception" for Rule 59(e) motions only "applies when 'there was strong precedent' prior to the change such that the failure to raise the issue was not unreasonable and the opposing party was not prejudiced by the failure to raise the issue sooner." *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605–06 (4th Cir. 1999). An intervening case that "did not address" the specific issues in the prior judgment "cannot be viewed as effecting a change in the law" for purposes of Rule 59(e). *Id.* at 606. The Supreme Court's decision in *Hencely* does not remotely fit the bill. The State does not identify any precedent relevant to this case that *Hencely* overruled. Nor does the State point to any argument that the State previously failed to make that it would now raise in light of *Hencely*. And this is because *Hencely* has little, if anything, to do with this action.

*Hencely* concerned the reach of federal common-law preemption of claims challenging conduct by military contractors in a war zone. *See* 146 S. Ct. at 1097. The court of appeals had held that state tort claims against a government contractor are preempted by federal law when the military retained command authority over a contractor integrated in combatant activity. *Id.* The Supreme Court reversed, holding that such a *per se* "test sweeps too broadly." *Id.* The State makes

6

a handful of tendentious references to "broad sweep," Mot. 16, but does not seriously argue that *Hencely* has any bearing on this Court's preemption ruling. Nor could it. This Court's *statutory* preemption ruling is nowhere implicated by the *constitutional* preemption question at issue in *Hencely*. After all, the Court in *Hencely* stated explicitly that the case did not concern "any federal statute," but rather whether "the Constitution's structure implicitly preempts any suit against a military contractor operating in a combat zone." 146 S. Ct. at 1093, 1097.

At bottom, a case about the scope of federal common-law immunity for military contractors in a war zone does not address, and thus does not alter, the preemptive effect of federal statutes and regulations related to coal mine safety. And the only recent Supreme Court opinion that has any bearing here is, as noted above, *Chevron*. The State's relegation of *Chevron* to a footnote on the last page of a motion, while leading with the irrelevant *Hencely* decision, is as ironic as it is indefensible. The State's motion should be denied.

### 2) The State's Preemption Arguments All Could Have Been Raised Previously And Cannot Be Considered Under Rule 59(e).

The State grounds its request for relief on legal theories and case law that "could have been raised prior." *Exxon Shipping*, 554 U.S. at 485 n.5. But it is black-letter law that "[c]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister*, 590 U.S. at 508. That is precisely what the State asks the Court to do here.

The parties already engaged in substantial briefing on the legal issues at the heart of this Court's decision. 3M's motion to dismiss argued that the State's claim under the WVCCPA—challenging the labeling and sale of 3M's 8210 respirator—was foreclosed as a matter of law by the federal regulatory scheme. Dkt. 23 at 5–13 (MTD). 3M demonstrated that the State's claim was preempted under both theories of conflict preemption: impossibility preemption and obstacle preemption. As to impossibility preemption, 3M argued (and the State failed to acknowledge in

7

its opposition) that impossibility preemption applies where a "party cannot independently satisfy . . . state duties" without "permission and assistance" from a "federal agency." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 623–24 (2011). That is the case here. As to obstacle preemption, 3M established that the State's suit was barred because the State's theory is that 3M must tell consumers the exact opposite of what NIOSH says and requires—that the 8210 respirator is not "effective" for the very uses NIOSH and MSHA authorize. MTD 3–4.

The State had ample opportunity to respond, and the Court closely evaluated the State's arguments and concluded that the State's claim was preempted. The Court held that the State's claim regarding the addition of warnings to the 8210 respirator and its instructions was barred by impossibility preemption because 3M would be "unable to independently comply without NIOSH approval." Op. 27. "To the extent that other aspects of West Virginia's claim would not require 3M to seek approval from NIOSH," the State's claim was still preempted because the State sought to "impose requirements that pose an obstacle to the purposes and objectives of the NIOSH and MSHA regulatory scheme." *Id.* at 27 & n.14.

The State now makes new arguments—all of which were available to the State previously—regarding both impossibility preemption and obstacle preemption:

***Impossibility Preemption***

- The State argues that it is "insufficient for 3M to establish impossibility preemption" based on the fact "[t]hat it was theoretically possible that NIOSH could have . . . rejected 3M's attempts to change what it put on the 8210 or the 8210 box." Mot. 10. The State exclusively cites published cases that are at least five years old, including some cases that the parties already briefed in this litigation. *See, e.g.*, *id.* at 3 (quoting *Taffin v. Levitt*, 493 U.S. 455, 458 (1990)).

8

- The State claims that NIOSH does not have the same active role as other federal agencies, such as the FDA. Mot. 14–15. The State cites years-old cases for that proposition too. *See, e.g.*, *id.* at 15 (citing *Wyeth v. Levine*, 555 U.S. 555 (2009)).

### *Obstacle Preemption*

- The State argues that the OSH Act's savings clause allows its claim to proceed. Mot. 6–10. This exception has appeared in the text of the OSH Act since 1970.

- The State relies on Section 667(a) of the OSH Act, which (as discussed below) sets out an exception to preemption inapplicable here. The State relies heavily on a Supreme Court case from more than thirty years ago. Mot. at 5–10 (citing *Gade v. Nat'l Solid Waste Mgmt. Ass'n*, 505 U.S. 88, 91–94, 107 (1992)).

- The State argues that the California Supreme Court's 2018 decision in *Solus Industrial Innovations, LLC v. Superior Court*, 4 Cal. 5th 316 (2018), supports its argument that its claim is not preempted. Mot. 5.

- The State attempts a new spin on the 2010 OSHA Letter that it cited so heavily in its opposition to 3M's motion to dismiss. Mot. 14

- The State now says that the text of the Mine Act forecloses 3M's preemption defense. Mot. 3–4. But the State did not even *cite* the Mine Act in its opposition to 3M's motion to dismiss. Dkt. 27 at 7–8 (MTD Opp.). The State has "no excuse for failing to include" the issue in the State's prior papers. *Mayfield*, 674 F.3d at 379–80.

All of these arguments could have been presented in the State's earlier briefing. Rule 59(e) does not permit litigants to file a motion "with new theories" based on the hope "it gets it right" a second time around. *Hanover Ins.*, 221 F.R.D. at 460.

9

In these circumstances, the Fourth Circuit has consistently affirmed district court decisions denying Rule 59(e) motions.  *See JTH Tax, Inc. v. Aime*, 984 F.3d 284, 290 (4th Cir. 2021) (affirming denial of Rule 59(e) motion where plaintiff "could have raised" the new arguments earlier); *see also Thomas v. S.C. Dep't of Mental Health*, 2024 WL 4298146, at *1 (4th Cir. Sept. 26, 2024) (unpublished) (affirming district court denial of Rule 59(e) motion when plaintiff "admittedly relied on new, broader arguments not made previously").  That is the end of the inquiry.

### B.    The Court Correctly Held That The State's Claim Is Preempted.

The Court need not reach the State's arguments on preemption because the State's motion does not comport with Rule 59(e).  But in any event, none of the State's contentions has merit.

#### 1)    3M Cannot Unilaterally Comply With Both Federal Law And The State's Purported Warning Requirements.

Impossibility preemption bars the State's claim because, as this Court held, "West Virginia's claim would impose a duty that 3M cannot independently satisfy without permission from NIOSH."  Op. 25 (citing *PLIVA*, 564 U.S. at 604).  The State advances several new arguments in its motion but never explains how 3M can unilaterally change its label to comply with both federal law and the state-law duty pressed by the State in this case.  In fact, the State does not even cite or discuss the text of the regulations that forbid 3M from making changes to its respirator labels and warnings without NIOSH's *advance* approval.  *See* 42 C.F.R. §§ 84.33(a), 84.35.  There is simply no basis to overturn this Court's impossibility preemption decision.

Faced with this reality, the State contends that this case only concerns the mere "'possibility of impossibility.'"  Mot. 10–12.  In other words, the State says, it is not impossible to comply with both state and federal law because NIOSH *could* approve 3M's requests for the statements state law supposedly requires.  This argument finds no support in the law, which distinguishes between (1) situations like this one, where the defendant needs *advance* approval to deviate from federal

standards and therefore cannot unilaterally comply with the purported state-law duty, such that the proposed state-law duty is preempted; and (2) situations where the defendant can comply with the purported state-law duty and seek approval from the federal government *after the fact*, such that the proposed state-law duty presents only the "possibility" of preemption.

The State's years-old cases all fit into the latter category. *See, e.g.*, *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 313–14 (2019); *Gaetano v. Gilead Scis., Inc.*, 529 F. Supp. 3d 333, 343 (D.N.J. 2021); *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 827 (N.D. Cal. 2019). For example, in *Wyeth v. Levine*, 555 U.S. 555 (2009), the Court held that the state-law claims were not preempted because the manufacturer had an affirmative *duty* under federal law to revise its label with new safety information, such as when there is "'reasonable evidence'" of a safety hazard, and *then* seek FDA approval. *Id.* at 571–73. The State's own quotation from *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578 (6th Cir. 2013), underscores this distinction: "It is true that the FDA had the authority to reject PLIVA's labeling change *after the fact*. But this is precisely the 'possibility of impossibility' that *Wyeth* found insufficient to warrant preemption." *Id.* at 584 (citing *Wyeth*, 555 U.S. at 573) (emphasis added). Because here, by contrast, 3M cannot make any change to the 8210's label without first obtaining NIOSH's approval, federal law preempts the State's claim.

The State resorts to an argument that NIOSH does not have the same active role as other federal agencies, such as the FDA. Mot. 14–15. That is wrong on multiple levels. For one thing, NIOSH does have a significant regulatory role. As this Court explained, NIOSH sets forth requirements and approves respirators only after they have been "'examined, inspected, and tested' by NIOSH." Op. 31. For another, the State's objections to NIOSH's review are irrelevant. The preemption inquiry does not turn on whether the State believes, in its own view, that a federal

11

regulatory regime is sufficiently rigorous.  That is a policy determination left to the federal government.  A State may prefer pursuing a policy goal by different means than those chosen by the federal government.  Yet its efforts will be "preempted" all the same because 3M cannot unilaterally act without the federal government's "special permission or assistance."  Op. 25 (quoting *PLIVA*, 564 U.S. at 623–24).

### 2)      The OSH Act Preempts The State's Claim.

This Court held that the State's claim failed under both impossibility and obstacle preemption based on the federal regulatory regime established by the OSH Act (as well as the Mine Act, *see infra*).  The Court explained that Congress's purposes reflected in the OSH Act foreclosed the State's claim.  To evade the preemptive effect of the OSH Act, the State's motion includes an extended effort to shoehorn its claim into two OSH Act exceptions.  Mot. 3–8.  Neither applies.

***Savings clause.***  The State argues that the OSH Act's savings clause allows its claim to proceed.  Mot. 6–10.  But this Court already held that "[t]he OSH Act's savings clause is not applicable to this case."  Op. 33.  That was for good reason.  Section 653 applies only to claims of "employers and employees" relating to "injuries, diseases, or death of employees arising out of, or in the course of, employment."  29 U.S.C. § 653(b)(4).  The State brings no such claim here.  While the State asserts in a footnote that it is an "employer" and has "employees," its claim has nothing to do with those employees, any alleged employee injuries, or any injuries arising out of the State's employment.  *See generally* Dkt. 1-3 (Compl.).  The Court rightly dismissed the savings clause's application.

***Section 667(a).***  The State then invokes Section 667(a), which provides that a State agency or court can "assert[] jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect."  29 U.S.C. § 667(a).  This exception to preemption is no help to the State either.

The State argues that because the WVCCPA is a law of general applicability—directed at "protect[ing] consumers and promot[ing] sound and fair business practices"—and not an occupational health and safety standard, it is not preempted. Mot. 6. This argument fails: In *Gade*, the Supreme Court explained that it did not "rely solely on the [State] legislature's professed purpose" when "assessing the impact of a state law on the federal scheme." 505 U.S. at 105. A State cannot enact a broad law and then narrowly direct its enforcement to "frustrate" federal law. *Id.* at 105–06. The relevant inquiry is not the State's characterization of its law, but rather the effect. Thus, "*all* state law that 'constitutes, in a direct, clear and substantial way, regulation of worker health and safety'" is preempted by the OSH Act. Op. 33 (quoting *Gade*, 505 U.S. at 107).

True, "state laws of general applicability" may "*generally* not be pre-empted" by the OSH Act, but that is only insofar as those laws "do not conflict with OSHA standards" and "regulate the conduct of workers and nonworkers alike." *Gade*, 505 U.S. at 107 (emphasis added). As this Court recognized, the conflict here is readily apparent. NIOSH sets out requirements for the approval of respirators that meet performance demands, and it imposes labeling requirements that signify NIOSH's approval. Op. 31–32 (citing 42 C.F.R. §§ 84.1(c), 84.10–84.66, 84.70–84.311). MSHA regulations specifically dictate that "all coal miners must be supplied with NIOSH-approved respirators." *Id.* at 31 (citing 30 C.F.R. § 72.700(a)). The State claims that representations in line with these federal standards are misleading or confusing, Compl. ¶ 172, but contrary statements by 3M, made to comply with a purported state-law labeling requirement, would be *more* confusing and "undermine" NIOSH's approval, *see* Op. 32.

The State argues that the California Supreme Court's nearly decade-old decision in *Solus Industrial Innovations, LLC v. Superior Court*, 4 Cal. 5th 316 (2018), supports its theory. Mot. 5. But that case is inapplicable because it addressed a different provision (§ 667(b)), and it concerned

13

OSH Act preemption when a State seeks to enforce *federally approved* state health and safety plans. *Id.* at 345. As the State acknowledges here, it is not seeking to enforce a federally approved health and safety plan. Mot. 7. Instead, it seeks to use this lawsuit to impose a different state-law duty than the federal standard. Accordingly, enforcement of occupational health and safety standards remains the exclusive province of NIOSH, and the State's claim remains preempted.

The State also contends that the OSH Act's exception under Section 667(a) applies because, according to the State, there is no federal standard here. Mot. 9. The State is wrong. Its allegations concern the labeling and sufficiency of federally approved respirators for use in coal mining. There are several federal requirements governing those "occupational safety or health issue[s]." 29 U.S.C. § 667(a); *see* Op. 25. To the extent the State argues that there is no federal misrepresentation standard (Mot. 9), the State's argument overlooks NIOSH's existing directive to withdraw approval for, among other things, "misleading advertising, and failure to maintain . . . the quality control requirements of the certificate of approval." 42 C.F.R. § 84.34.

The State returns to the 2010 OSHA Letter that it cited so heavily in its opposition to 3M's motion to dismiss. That agency letter purporting to interpret the law is entitled to no deference whatsoever. Dkt. 30 at 9–10 (MTD Reply). As this Court already did in reaching its decision, the Court is tasked with interpreting the law by its own lights. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024). In the 2010 letter, OSHA makes clear that any information a manufacturer provides cannot "conflict with the approved labeling" and that "[i]f OSHA or MSHA rules require (or prohibit) a specific action that must be specifically performed (or avoided), a state could not make that action (or omission) a tort." Dkt. 27-4. By requiring 3M to direct consumers to ignore NIOSH approval—whether explicitly or by otherwise suggesting its respirators are not effective

14

for the purposes NIOSH and MSHA found they were—the State seeks to enforce its law in a way that interferes with the OSH Act and Mine Act.

### 3) The Mine Act Preempts The State's Claim.

The State next tries to salvage its claim from this Court's ruling that the Mine Act barred its claim under obstacle preemption, despite the State's failure to cite the Mine Act in its initial briefing.  Mot. 3–5.  That belated effort fails because the Mine Act's savings clause is inapplicable.  The Mine Act preempts state law "insofar as such State law is in conflict" with the Mine Act or any "mandatory health or safety standard."  30 U.S.C. § 955(a).  But the Mine Act does not preempt state laws that provide "for more stringent health and safety standards applicable to coal or other mines" or those that "provide for health and safety standards applicable to coal or other mines for which no provision" is contained in federal law.  *Id.* § 955(b).

The State fails to explain why it believes the Mine Act's savings clause can apply when that clause's text limits its application to "health and safety standards applicable to coal or other mines," yet the State urges—and the Court found—that the WVCCPA is *not* a "health and safety standard applicable to coal mines."  Mot. 4; *see* Op. 34 (stating that the WVCCPA "is not a worker health and safety statute").  At bottom, the State's claim is an attempt to enforce a "State law" that is "in conflict with" the Mine Act and a "mandatory health or safety standard" established by federal regulatory agencies.  30 U.S.C. § 955(a).  As discussed in this Court's order, the State's claim directly conflicts with MSHA's specific directive that NIOSH-approved respirators be supplied for use in mines, MSHA's clear determination that such respirators are appropriate, and NIOSH's mandatory health or safety standards promulgated under the OSH Act.  *See* Op. 32 ("West Virginia's claim would interfere with the methods utilized under the NIOSH and MSHA regulatory scheme, and is, therefore, preempted.").

15

**4)    The State's Cited Authorities Do Not Save The State's Claim.**

Finally, the State attempts to turn this Court's attention to other decisions regarding other federal statutes, asserting that they demonstrate obstacle preemption does not apply to its WVCCPA claim.  Mot. 8 n.5, 14, 16, 17 n.15.  But obstacle preemption is based on the text and purpose of the specific federal statute, the specific regulatory scheme, and the specific claim at issue.  Accordingly, the State's motley of additional citations carries little weight.

For example, the State cites decisions rejecting preemption of claims by the Higher Education Act, but those decisions were based on the finding that the purported federal interest was "not firmly rooted in the text of" the Act, a lack of clear conflict with that particular statute's provisions, and Congress's language on preemption in that statute.  *Oakley v. Coast Pro., Inc.*, 570 F. Supp. 3d 365, 380 (S.D.W. Va. 2021); *see also Pennsylvania v. Navient Corp.*, 967 F.3d 273, 292 (3d Cir. 2020); *Snuffer v. Great Lakes Educ. Loan Servs., Inc.*, 97 F. Supp. 3d 827, 832 (S.D.W. Va. 2015).  The State's other cited cases are equally distinguishable and equally beside the point.  *See Guthrie v. PHH Mortg. Corp.*, 79 F.4th 328, 339–40 (4th Cir. 2023) (concluding federal scheme was not comprehensive and thus "not the type of Congressionally designed balance that implicates obstacle preemption"); *Cline v. Bank of Am., N.A.*, 823 F. Supp. 2d 387, 397 (S.D.W. Va. 2011) (assessing statute that specifically limited preemption to "[s]tate consumer financial laws"); *GenBioPro, Inc. v. Sorsaia*, 2023 WL 5490179, at *8 (S.D.W. Va. Aug. 24, 2023) (rejecting preemption because state and federal laws governed distinct conduct and parties), *aff'd sub nom. GenBioPro, Inc. v. Raynes*, 144 F.4th 258 (4th Cir. 2025).

None of the State's inapposite authorities provides a reason for this Court to reconsider its preemption analysis.

16

## CONCLUSION

For the foregoing reasons, the State's Rule 59(e) motion should be denied.


Dated: June 2, 2026                                   Respectfully submitted,


                                                      */s/ Bryant J. Spann*
                                                      Bryant J. Spann, Esq. (WV Bar No. 8628)
                                                      Robert H. Akers, Esq. (WV Bar No. 9622)
                                                      THOMAS COMBS & SPANN, PLLC
                                                      300 Summers Street, Suite 1380
                                                      Charleston, WV 25301
                                                      Telephone:  (304) 414-1800
                                                      BSpann@tcspllc.com
                                                      RAkers@tcspllc.com

                                                      */s/ Lauren Goldman*
                                                      Lauren Goldman, *pro hac vice*
                                                      Justine Goeke, *pro hac vice*
                                                      GIBSON, DUNN & CRUTCHER LLP
                                                      200 Park Avenue
                                                      New York, NY 10166-0193
                                                      Telephone: (212) 351-4000

                                                      Steven R. Ruby, Esq. (WV Bar No. 10752)
                                                      CAREY DOUGLAS KESSLER & RUBY PLLC
                                                      901 Chase Tower
                                                      707 Virginia Street, East
                                                      P.O. Box 913
                                                      Charleston, WV 25323

                                                      *Counsel for Defendant 3M Company*

17

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

STATE OF WEST VIRGINIA, *ex rel*. JOHN B. McCUSKEY, Attorney General,

        Plaintiff,

    v.

3M COMPANY,

        Defendant.

Civil Action No. 2:25-cv-00750
Judge Irene C. Berger

## CERTIFICATE OF SERVICE

I, Bryant J. Spann, hereby certify that on June 2, 2026, a copy of the foregoing was served on counsel for Plaintiff by electronic filing through the CM/ECF system.


Jace H. Goins, Esq., Chief Deputy Att'y Gen.
Vaughn T. Sizemore, Esq., Deputy Att'y Gen.
OFFICE OF THE ATTORNEY GENERAL
Building 1, Room 26-E
Capitol Complex
Charleston, WV 25305

J. Timothy DiPiero, Esq.
Lonnie C. Simmons, Esq.
Robert M. Bastress III, Esq.
DiPIERO SIMMONS
McGINLEY BASTRESS, PLLC
P.O. Box 1631
Charleston, WV 25326

*Counsel for The State*


                        */s/ Bryant J. Spann*
                        Bryant J. Spann, Esq. (WV Bar No. 8628)

18